Wesley D. Ray (SBN 026351)
Wesley.Ray@SacksTierney.com
Philip R. Rudd (SBN 014026)
Philip.Rudd@SacksTierney.com
Sierra M. Minder (SBN 035795)
Sierra.Minder@SacksTierney.com
**SACKS TIERNEY P.A.**
4250 N. Drinkwater Blvd., 4th Floor
Scottsdale, AZ 85251-3693
Telephone:  480.425.2600
Facsimile:  480.970.4610
*Attorneys for Debtor*

**IN THE UNITED STATES BANKRUPTCY COURT**

**THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>SUMMIT FAMILY RESTAURANTS INC.,<br><br>Debtor. | Chapter 11 Proceedings<br><br>Case No. 2:21-bk-02477-BKM<br><br>**DEBTOR'S PLAN OF REORGANIZATION DATED JUNE 21, 2021.** |

Summit Family Restaurants Inc, as debtor-in-possession in the above captioned bankruptcy case, hereby submits to the Court and creditors of the Debtor's Estate this *Plan of Reorganization Dated June 21, 2021* pursuant to 11 U.S.C. § 1189.

## I. DEFINITIONS

For purposes of this Plan, capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in this Section I of the Plan.  Any term used in the

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

Plan that is not defined in the Plan, but is defined in the Bankruptcy Code or the Bankruptcy Rules, retains the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules. Whenever the context requires, such terms include the plural as well as the singular, the masculine gender includes the feminine gender, and the feminine gender includes the masculine gender.

As used in this Plan, the following terms have the meanings specified below:

**Allowed Administrative Claim**: Every cost or expense of administration in the Bankruptcy Case, including, but not limited to, any actual and necessary expenses of preserving or disposing of the assets of the Estate, any actual and necessary expenses incurred in operating the Debtor's business post-petition, any professional fees and costs approved by the Court, and all Claims approved under Bankruptcy Code § 507(a).

**Allowed Claim:** A Claim:

1.      With respect to which a proof of claim has been filed with the Court within the applicable period of time fixed by Bankruptcy Rule 3003 and to which no objection to the allowance of the Claim has been filed by the Debtor or any other party or as to which any such objection has been determined by an order or judgment of the Court which is no longer subject to appeal and to which no appeal is pending; or

2.      Scheduled in the lists of creditors prepared and filed with the Court pursuant to Bankruptcy Rule 1007(b) and not listed as disputed, contingent, or unliquidated as to the amount.

An Allowed Claim shall not include unmatured or post-petition interest, penalties, fees, or costs, unless specifically stated in the Plan. Notwithstanding Bankruptcy Code

3049132.v1

section 502(a) and Bankruptcy Rules 3001 and 3003, for the purposes of the Plan, a Claim shall not be an Allowed Claim unless it satisfies the definition of Allowed Claim under this Plan.

**Allowed Interest**:  An Interest in the Debtor held by a person or entity as of the Petition Date, and to which no objection to the allowance of the Interest has been filed by the Debtor or any other party, or as to which any such objection has been determined by an order or judgment of the Court which is no longer subject to appeal and to which no appeal is pending.

**Allowed Priority Claim**:  The Allowed Claim of a Creditor that is entitled to priority in payment under Bankruptcy Code sections 507(a)(3) through (a)(10).

**Allowed Secured Claim**:  An Allowed Claim to the extent that such Allowed Claim is secured by a lien that is unavoidable, on property in which the Estate has an interest, to the extent of the value of such Creditor's interest in the Estate's interest in such property, as determined in light of the purpose of the valuation and of the proposed disposition and use of such property.

**Allowed Unsecured Claim**:  An Allowed Claim to the extent that such Allowed Claim is not secured by a lien on property in which the Estate has an interest.

**Bankruptcy Case**:  The Debtor's Chapter 11 bankruptcy case; Case Nos. 2:21-bk-02477-BKM.

**Bankruptcy Code**:  11 U.S.C. §§ 101, *et seq*., including, and as amended by, the Small Business Reorganization Act of 2019 11 U.S.C. §§ 1181, *et. seq.*, applicable to these Bankruptcy Case.

3049132.v1

**Bankruptcy Court**: The United States Bankruptcy Court for the District of Arizona.

**Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure in effect as of the Petition Date.

**Chapter 11**: Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 1101, *et seq*.

**Claim**: (a) A right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, which right arose or accrued prior to the Confirmation Date; (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, un-matured, disputed, undisputed, secured, or unsecured, where such right arose or accrued prior to Confirmation; or (c) a claim arising under Bankruptcy Code section 502(g).

**Claimant or Creditor**: Any person or entity that asserts a Claim.

**Confirmation**: The signing by the Court of the Confirmation Order.

**Confirmation Date**: The date upon which the Confirmation Order is entered upon the Bankruptcy Court's docket.

**Confirmation Order**: The Order signed by the Bankruptcy Court pursuant to Bankruptcy Code section 1191 confirming this Plan.

**Contingent Claim**: Any Claim for which a proof of claim has been filed with the Bankruptcy Court: (a) that was not filed in a sum certain, or that has not accrued and is

3049132.v1

dependent on a future event that has not occurred and may never occur, and (b) that has not been allowed on or before the Confirmation Date.

**Court**: The Bankruptcy Court.

**Debtor**: Summit Family Restaurants Inc.

**Disputed Claim**: A Claim that the Debtor listed as unliquidated, disputed, or contingent in its Schedules of Assets and Liabilities, or to which an objection has been filed that has not been resolved by a Final Order of the Bankruptcy Court.

**Eatertainment**: An establishment that combines a dining experience with entertainment and activities.

**Effective Date**: The first business day that is at least 30 days after the Confirmation Date. In the event the Confirmation Order has been stayed by a court of competent jurisdiction, the Debtor may elect to delay the Effective Date pending a resolution of the order staying the Confirmation Order.

**Estate**: The accumulation of the Debtor's bankruptcy estate, created by the filing of the Petition, as identified and described in Bankruptcy Code sections 541 and 1186.

**Final Order**: An order or judgment of the Bankruptcy Court that has not been stayed.

**Insider**: A person or entity within the definition contained at Bankruptcy Code section 101(31).

**Interest**: Any equity interest the Debtor as of the Petition Date.

**Interest Holder**: Any person or persons owning an Interest in the Debtor as of the Petition Date.

3049132.v1

**IRS**:  The United States Department of the Treasury Internal Revenue Service, acting through its properly designated affiliates, representatives and agents.

**Landlord:** BSV Lamont JCRS, LLC.

**Lease:** The lease agreement for the Premises between the Debtor and the Landlord dated September 12, 2014.

**New Debt Obligations**:  Those debts of the Debtor that existed pre-confirmation, but that are modified by the confirmed Plan resulting in the creation of a new obligation of the Reorganized Debtor pursuant to this Plan.  The obligations for which the Reorganized Debtor has liability under the terms of the confirmed Plan.  The New Debt Obligations shall not be considered in default unless or until the Reorganized Debtor defaults on such obligations after the Effective Date.

**Person**:  Any individual, corporation, partnership, joint venture, association, joint stock company, trust, unincorporated association or organization, governmental agency, or associated political subdivision.

**Petition**:  The voluntary bankruptcy petition for relief filed by the Debtor under Chapter 11 of the Bankruptcy Code, which commenced the Bankruptcy Case.

**Petition Date**:  The date on which the Petitions were filed; April 6, 2021.

**Plan**:  This Plan of Reorganization Dated June 21, 2021 and any amendments or supplements hereto.

**Premises**: The shopping center located at 6715 West Colfax Ave, Lakewood, Colorado, 80214, where the Debtor operates Casa Bonita.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251–3693

6

3049132.v1

**Projected Disposable Income**:  As provided in 11 U.S.C. § 1191, the amount of income that is received by the Debtor and not reasonably necessary to be expended for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the Debtor, and therefore available for the payment of Allowed Claims under the Plan, as reflected in the Projections attached hereto as Exhibit "A."

**Projections:**  The financial projections of the Debtor attached hereto as Exhibits "A."

**Reorganized Debtor**:  The Debtor after the Effective Date.

**SBA**:  The United States Small Business Administration, acting through its properly designated affiliates, representatives and agents.

**SBI**:  Star Buffet Inc.

**Schedules** or **Schedules of Assets and Liabilities**:  The Schedules of Assets and Liabilities and Statements of Financial Affairs, and any amendments thereto, filed by the Debtor.

**Trustee**:  The Subchapter V Trustee appointed in the Bankruptcy Case; Mr. Christopher Simpson.

**Unliquidated**:  The term describing the Allowed Claim of a Creditor when the value of its claim has not been determined or stated with finality.

## II.    INTRODUCTION

This Plan is being proposed by the Debtor to reorganize its liabilities, so as to permit continued operations from which Creditors and Interest Holders can be paid, and avoid the disastrous effects of a liquidation.  Unless otherwise noted, those portions of the Plan providing factual information concerning the Debtor, its assets, and its liabilities, have been

3049132.v1

prepared from information maintained or prepared by the Debtor and its retained professionals. The financial information contained in this Plan has not been subjected to an audit by an independent auditor or certified public accountant. The Debtor is not able to warrant or represent that the information contained in this Plan is without any inaccuracies. To the extent practicable, the information provided herein has been prepared from the Debtor's financial books and records and efforts have been made to ensure that all such information is fairly represented.

This Plan will classify all Creditors and Interest Holders into classes. The treatment of each class of Creditors or Interest Holders will be set forth in the Plan. You should carefully examine the treatment of the class to which your Claim or Interest is assigned.

The Bankruptcy Court will confirm the Plan if the requirements of Bankruptcy Code are satisfied. The Bankruptcy Court must determine whether the Plan has been accepted by each impaired class entitled to vote on the Plan. Impaired classes entitled to vote on the Plan are those classes of claims whose legal, equitable, or contractual rights are altered, as provided in Bankruptcy Code section 1124. An impaired class of Claims is deemed to have accepted the Plan if Claimants holding at least two thirds (2/3) of the dollar amount of those Claims who vote, and more than one half (1/2) in number of those Claims who vote, have accepted the Plan. An impaired class of Interests is deemed to have accepted the Plan if the Plan has been accepted by at least two thirds (2/3) in amount of the Allowed Interests who vote on the Plan. Only the votes of those Creditors or Interest Holders whose ballots are timely received will be counted in determining whether a class has accepted the Plan. Even if each class of Creditors and Interest Holders does not accept the Plan, the Plan can be

3049132.v1

confirmed under Bankruptcy Code section 1191(b).

## III.   HISTORY OF THE DEBTOR'S BUSINESS OPERATIONS

The Debtor operates a large Eatertainment establishment known as Casa Bonita. Casa Bonita is a nationally known attraction offering a comprehensive dining and entertainment experience featuring cliff diving shows, stage shows, live music, an amusement arcade, and a large gift shop. Casa Bonita historically has had between 150 and 300 employees, dependent upon season. Casa Bonita is 50,837 square feet and has total seating of 1,200 patrons.

Casa Bonita is located outside of Denver, Colorado, in Jefferson County, in a shopping center at 6715 West Colfax Ave, Lakewood, Colorado, 80214. The Debtor leases the Premises from BSV Lamont JCRS, LLC under a lease agreement dated September 12, 2014.

Until the COVID-19 global pandemic, the Debtor successfully operated Casa Bonita since 1997, and, in recent history, consistently generated annual revenues in excess of $6 million dollars. However, the Eatertainment industry has been especially hard-hit by COVID-19.  COVID-19 and the array of resultant stay-at-home orders entered across the United States prevented Eatertainment operators, like the Debtor, from conducting business.

Specifically, Colorado's Governor Polis issued Executive Orders mandating the closure of all indoor restaurants and entertainment, including Casa Bonita, from March 17, 2020 through September 5, 2020. Thereafter, due to rapidly increasing levels of COVID-19 in Jefferson County, the County was moved to "Level Red," resulting in the continued mandatory closure of all indoor dinning from November 17, 2020 to January 4, 2021.  From

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251–3693

9

March 17, 2020 until March 23, 2021, when not mandated to be completely closed, even with the most lenient capacity restrictions, Casa Bonita would have only been able to operate at 2% to 18% of its seated capacity, and would not have been allowed to offer Casa Bonita's traditional array of entertainment that includes cliff divers, skits, and mariachi performances. Furthermore, Casa Bonita would not have been able to operate its arcade business, an element vital to Casa Bonita's operations. Due to Casa Bonita's size and business model, the Debtor could not viably consider reopening it until it was able to operate at a higher capacity level and with complementary entertainment, arcade, and retail offerings. Not until the day before the Petition Date, on April 5, 2021, were Colorado restrictions prohibiting restaurants from having arcades lifted.

These extended, forced closures of Casa Bonita and other adverse impacts resulting from of the COVID-19 pandemic on the Eatertainment industy, caused the Debtor's operations and revenues to suffer greatly in 2020 and so far in 2021.  The Debtor has no source of revenue other than from the operation of Casa Bonita. While it paid it's rent through May 2020, due to the COVID impacts, the Debtor fell behind in rent payment, thereafter. Despite the Debtor's assurance that it intended to reopen Casa Bonita as soon as possible and address its back rent, the Landlord brought suit in Colorado state court to evict the Debtor. That action ultimately led to the Debtor's bankruptcy filing.

Since the Jefferson County and State COVID restrictions have relaxed, the Debtor has been earnestly working to fully reopen Casa Bonita as quickly as possible. The Debtor, like most businesses, have been forced to adapt and reevaluate in order to cope with the fallout of COVID-19. Under the current regulations, the Debtor is confident it will be able to

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

3049132.v1

implement new safety policies and adapt Casa Bonita's business so that it can open safely to the public, while still providing the one-of-kind dining and entertainment experience patrons have come to expect from Casa Bonita over the last 47 years.

### A.    The Debtor's Ownership and Management

Robert Wheaton is the Debtor's sole director and Chief Executive Officer.  SBI owned 100% of the Interests in the Debtor as of the Petition Date.  Robert Wheaton is SBI's largest shareholder and its President and Chief Executive Officer.

### B.    Projections for Future Operations

With consideration of all of the foregoing, among other things, the Debtor, has prepared financial Projections extending through the first quarter of 2026 to demonstrate its ability to perform under the Plan. The Projections for the Debtor are attached hereto as Exhibit "A" and incorporated fully herein by this reference.  The Projections are based upon the Debtor's best current estimates of the future revenues to be generated through its operations, and the expenses the Debtor presently expects to incur.  The Debtor reserves the right to amend or revise the Projections in the future.

## IV.    CLASSIFICATION OF CLAIMS AND INTERESTS

### A.    Class 1:  Administrative and Priority Claims

1.    Class 1-A:  Allowed Administrative Claims.

2.    Class 1-B:  Allowed Priority Tax Claims.

### B.    Class 2: Secured Claims

3.    Class 2-A: Allowed Secured Claim of the IRS.

4.    Class 2-B: Allowed Secured Claim of Jefferson County.

3049132.v1

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

5.      Class 2-C: Allowed Secured Claim of the SBA.

**C.      Class 3:  Unsecured Claims**

6.      Class 3-A: Allowed Unsecured Claims.

**D.      Class 4: Equity Interests**

7.      Class 4-A: Allowed Interests.

## V.      IMPAIRMENT OF CLASSES

Classes 1-A, 1-B, 2-A, and 2-B are unimpaired under the Plan.  All other Classes are impaired, as that term is defined in Bankruptcy Code section 1124.

## VI.      TREATMENT OF CLASSES

**A.      <u>Class 1:  Priority Claims</u>**

**1.  Class 1-A: Allowed Administrative Claims**

This Class consists of all Allowed Administrative Claims against the Debtor. Any Allowed Administrative Claims incurred in the ordinary course of the Debtor's operations will be paid in accordance with the terms established by the Court or as agreed by the Debtor and the implicated Claimant.  Unless Claimants holding Claims in this Class agree to an alternative form of treatment, the Allowed Administrative Claims of Class 1-A shall be paid in full, in cash, on or before the Effective Date.  Any Class 1-A Administrative Claim not allowed as of the Effective Date shall be paid as soon thereafter as it is allowed and ordered paid by the Court.  This class is unimpaired.

**2.  Class 1-B:  Allowed Priority Tax Claims**

This class consists of Allowed Priority Claims under 11 U.S.C. § 507(a)(8).  As provided in 11 U.S.C. § 1129(a)(9)(C), unless they agree to an alternative form of treatment,

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

3049132.v1

Claimants holding Claims in this Class will be paid in full in equal quarterly installments, commencing 30 days after the Effective Date, with interest accruing at 4% per annum.  Any amount that remains owing to the holder of an Allowed Priority Claim in this Class, on account of such Allowed Priority Claim, shall be paid on the third anniversary of the Effective Date.  Any Class 1-B Claims not allowed as of the Effective Date shall be paid, according to the terms of this Class, as soon thereafter as they are allowed by the Court. This Class is unimpaired.

B.   **Class 2:  Allowed Secured Claims**

1.   **Class 2-A – Allowed Secured Claim of the IRS**

The IRS asserts that the amount of its Claim is approximately $175,910.00, and that its Claim is secured by a blanket lien on all property of the Debtor.  Pursuant to § 506(a) of the Bankruptcy Code, the amount of the IRS's Allowed Secured Claim will be limited to the value of its collateral, as determined by the Court or agreement of the Parties. Any amount by which the IRS's Allowed Claim exceeds the value of its collateral will be treated as part of Class 1-B or Class 3-A, as appropriate.

Pursuant to 11 U.S.C. § 1129 (a)(9)(D), the Debtor will pay the IRS's Allowed Secured Claim, in full, in equal quarterly installments, commencing 30 days after the Effective Date, with interest accruing at 4% per annum.  Any amount that remains owing on account of the Allowed Secured Claim of the IRS shall be paid on the third anniversary of the Effective Date.  Any Class 2-A Claims not allowed as of the Effective Date shall be paid, according to the terms of this Class, as soon thereafter as they are allowed by the Court.

The Debtor may pay all, or any portion, of the balance of the IRS's Allowed Secured

13

Claim at any time without penalty. The IRS will retain its liens and security interests in the Debtor's property, with the same validity and priority, and to the same extent, that such liens existed on the Petition Date. Immediately upon payment in full of IRS's Allowed Secured Claim, all of the IRS's liens and security interests in the Debtor's property, will be deemed satisfied, extinguished, released, and discharged in full. This class is unimpaired.

**2. Class 2-B – Allowed Secured Claim of Jefferson County.**

The Jefferson County Treasurer asserts that the amount of its Claim is approximately $21,985, and that its Claim is secured by a blanket statutory lien on all property of the Debtor. Pursuant to § 506(a) of the Bankruptcy Code, the amount of Jefferson County's Allowed Secured Claim will be limited to the value of its collateral, as determined by the Court or agreement of the Parties. Any amount by which Jefferson County's Allowed Claim exceeds the value of its collateral will be treated as part of Class 1-B or Class 3-C as appropriate.

Pursuant to 11 U.S.C. § 1129 (a)(9)(D), the Debtor will pay Jefferson County's Allowed Secured Claim, in full, in equal quarterly installments, commencing 30 days after the Effective Date, with interest accruing at 4% per annum. Any amount that remains owing on account of the Allowed Secured Claim of Jefferson County shall be paid on the third anniversary of the Petition Date. Any Class 2-B Claims not allowed as of the Effective Date shall be paid, according to the terms of this Class, as soon thereafter as they are allowed by the Court.

The Debtor may pay all, or any portion, of the balance of Jefferson County's Allowed Secured Claim at any time without penalty. The Jefferson County Treasurer will retain its liens and security interests in the Debtor's property, with the same validity and

3049132.v1

priority, and to the same extent, that such liens existed on the Petition Date. Immediately upon payment in full of Jefferson County's Allowed Secured Claim, all of the Jefferson County's liens and security interests in the Debtor's property, will be deemed satisfied, extinguished, released, and discharged in full. This class is unimpaired.

### 3. Class 2-C – Allowed Secured Claim of the SBA.

This Class consists of the Allowed Secured Claim of the SBA against the Debtor. The SBA has asserted a claim in the amount of $154,176.37 against the Debtor in connection with a pre-petition EIDL loan, and has asserted that such claim is secured by a security interest in all of the Debtor's personal property. The Reorganized Debtor will repay the entire amount of the SBA's claim arising from the EIDL loan pursuant to the terms of the EIDL loan documents between the Debtor and the SBA.

As provided in the EIDL loan documents, interest will accrue on the SBA's Allowed Secured Claim at the rate of 3.75% per annum. As provided in the EIDL loan documents, the Reorganized Debtor will make installment payments, including principal and interest, of $731.00 per month for a period of 30 years. Payments will commence on the 30th day following the Effective Date.

The Reorganized Debtor may pay all, or any portion, of the balance of SBA's Allowed Secured Claim at any time without penalty. The SBA will retain its liens and security interests in the Debtor's property, with the same validity and priority, and to the same extent, that such liens existed on the Petition Date. Immediately upon payment in full of the SBA's Allowed Secured Claim, all of the SBA's liens and security interests in the SBA Collateral (or in any and all other property or assets owned by the Debtors or the

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

15

Reorganized Debtor) will be deemed satisfied, extinguished, released, and discharged in full. This class is impaired.

C.     **Class 3: Allowed Unsecured Claims**

1.  **Class 3-A – Allowed Unsecured Claims**

This Class consists of all Allowed Unsecured Claims against the Debtor, including any unpaid and unforgiven portion of any loan received by the Debtor under the Paycheck Protection Program, and any other Allowed Claim not included in any other Class in the Plan.  Holders of Allowed Unsecured Claims in this Class will be paid in full, in equal quarterly instalments, with interest accruing from the Effective Date on the unpaid balance of their respective claims at 3% per annum, commencing 30 days after the Effective Date. Any amount that remains owing on an Allowed Unsecured Claim in this Class shall be paid on the third anniversary of the Effective Date.

D.     **Class 4: Equity Interests**

1.  **Class 4-A – Allowed Interests**

Star Buffet, Inc. will retain its equity interest in the Reorganized Debtor.

VII.   **MEANS FOR EXECUTING THE PLAN**

A.     **Funding or Sale**

The Plan will be funded through the Reorganized Debtor's continued operations.  The Reorganized Debtor shall also have the ability, at any time, to enter into any sale, merger, or other transaction, so long as, upon the closing of any such transaction, the Secured Claims relating to any assets to be transferred, and the payments yet to be made to Unsecured Creditors holding Claims against the implicated Reorganized Debtor under Class 3-A of the

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

Plan, are paid in full.  After the Effective Date, the Reorganized Debtor shall have the authority to retain such brokers, agents, counsel, or representatives as it deems necessary.

### B.   Payment of Small Claims as a Matter of Administrative Convenience

To avoid the cost and burden associated with the administration of nominal future payments, notwithstanding the treatment of the Class of which any such Allowed Claim may otherwise be a part, the Debtor, at its option, shall have the ability to pay immediately and in full any Allowed Claim in an amount that is less than $5,000.

### C.   Post Confirmation Management

The Debtor will retain its prepetition management after confirmation of the Plan. Robert Wheaton will continue to be the Debtor's sole Director and Chief Executive Officer and Ronald Dowdy will continue to serve as the Debtor's Secretary and Treasurer. While currently Mr. Wheaton or Mr. Dowdy do not receive compensation from the Debtor, but from the Debtor's parent entity, all employment arrangements are subject to change at the Debtor's discretion and in the Debtor's sound business judgment.  Management positions may be added or removed at the Debtor's discretion and in the Debtor's sound business judgment.

### D.   Suspension of Payments

All of the payments to Creditors contemplated in this Plan assume that the Reorganized Debtor is able to continuously operate Casa Bonita.  In the event the Reorganized Debtor is forced to close Casa Bonita by virtue of any federal, state, county, or municipal regulation, order, or decree, the Reorganized Debtor's obligation to make the payments to Creditors called for under the Plan will be completely suspended for the period

3049132.v1

of time during which Casa Bonita is closed.  Notwithstanding anything herein to the contrary, in the event that the Reorganized Debtor is forced into closure and suspends payments in accordance with this section, that Reorganized Debtor will extend, by a time period equal to the duration of the payment suspension, payments to Creditors in accordance with this Plan.

### E.    <u>Substitutions of Payments</u>

Any payment obligation the Reorganized Debtor may have under the Plan will be reduced by the amount of any payment received from a third party by any Creditor on account of a claim against the Debtor.  For all purposes associated with the Plan, any such payment will be credited to the Reorganized Debtor, and treated as though the payment was made thereby.

### F.    <u>Disbursing Agent</u>

The Reorganized Debtor will serve as its own Disbursing Agent and make distributions to holders of Allowed Claims in accordance with the Plan.

### G.    <u>Documentation of Plan Implementation</u>

In the event any holder of an Allowed Secured Claim or any other lien or security interest in any of the Debtor's assets for which the Plan requires the execution of any documents to incorporate the terms of the Plan, fails to provide a release of its lien or execute the necessary documents to satisfy the requirements of the Plan, the Reorganized Debtor may record a copy of this Plan or the Confirmation Order with the appropriate governmental agency and make the appropriate revisions in its records, and such recordation and revisions shall constitute the lien release and creation of any necessary new liens to satisfy the terms

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

3049132.v1

of the Plan.  If the Reorganized Debtor deems advisable, it may also obtain a further Order from the Court that may be recorded in order to implement the terms of the Plan.

### H. New Obligations

Any Allowed Claims which are otherwise impaired herein, and which are paid in deferred payments, shall be a New Obligation of the Reorganized Debtor under the terms described herein and completely replace any pre-confirmation obligations of the Debtors.

## VIII.  LIQUIDATION ANALYSIS

Attached hereto as Exhibit "B" is a liquidation analysis showing what the Debtor projects to be available to Creditors in the event of a Chapter 7 liquidation.  Notably, this analysis does not include an estimate of the fees and costs that would be payable to the Trustee, and his or her professionals, for the administration of any such Chapter 7 liquidation. Those fees and costs would further and significantly reduce any distribution that might otherwise be available to unsecured creditors.  If the Plan is not confirmed, and the Debtor's assets were liquidated under Chapter 7 of the Bankruptcy Code, the unsecured creditors would receive a significantly reduced distribution in comparison to if the Plan was confirmed. If the Debtor is liquidated, the SBA's PPP loan of $1,001,562 would not be forgiven and instead would be treated as an unsecured claim to be paid pro rata from the funds available to the unsecured creditors. Similarly, if the Debtor is liquidated, the balance due on its Lease would be treated as an unsecured claim.

The Debtor's assets consist, primarily, of the equipment and inventory necessary to operate Casa Bonita.  All of the Debtor's assets are subject to one, or more, asserted security interests.  In the event of a closure and a subsequent liquidation, all of the Debtor's property

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

3049132.v1

concluded to be a fixture would likely transfer to the Debtor's landlord, and the remainder of the Debtor's property would likely be surrendered to the Debtor's secured creditors.  As restaurant and entertainment related equipment and inventory depreciates in value quickly, it is likely that the Debtor's property would sell for very little in a liquidation sale. The Debtor's Plan calls for full payment of all its creditors. In all likelihood, if liquidated, only the Debtor's secured creditors would receive full payment of their claims; all other Creditors and Interest Holders would receive significantly less. The Debtor's ability to pay Unsecured Creditors is dependent on its ability to continue to generate revenue through the operation after the Effective Date.

Therefore, as the Plan provides for full payment of all Allowed Claims, holders of Allowed Unsecured Claims will certainly recover more under this Plan than they would if the Debtors were liquidated.

## IX.   EFFECT OF CONFIRMATION

If the Plan is confirmed under Section 1191(a) of the Bankruptcy Code, except as otherwise provided for in the Plan or the Confirmation Order, Confirmation of the Plan will discharge, effective as of the Confirmation Date, any and all debts of the Debtor that arose any time before the entry of the Confirmation Order including, but not limited to, all principal and all interest accrued thereon, pursuant to Bankruptcy Code section 1141(d)(1). The discharge shall be effective as to each Claim, regardless of whether a proof of claim thereon was filed, whether the Claim is an Allowed Claim, or whether the holder thereof votes to accept the Plan.

3049132.v1

Pursuant to Section 1192 of the Bankruptcy Code, if the Plan is confirmed under Section 1191(b) of the Bankruptcy Code, as soon as practicable after completion by the Debtor of all payments due after the Effective Date, the Court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of the Bankruptcy Code, and all other debts allowed under section 503 of the Bankruptcy Code and provided for in the Plan.

In addition, any pre-confirmation obligations of the Debtor dealt with in this Plan shall be considered New Debt Obligations of the Reorganized Debtor that completely replace the Debtor's pre-confirmation obligations, and these New Debt Obligations shall not be considered in default unless and until the Reorganized Debtor defaults in making payments on the New Debt Obligations pursuant to the terms of the Plan. The New Debt Obligations provided for in the Plan shall be in the place of, and completely substitute for, any pre-Confirmation obligations of the Debtor.

## X.    OBJECTIONS TO AND ESTIMATIONS OF CLAIMS

### A.    Objections and Bar Date for Filing Objections

As soon as practicable, but in no event later than 90 days after the Effective Date, objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made pursuant to the Bankruptcy Code and the Bankruptcy Rules.

### B.    Settlement of Claims

The Debtor may use its cash on hand to consummate settlements of Claims against the Estate. Any settlement reached prior to the closure of the Debtor's Bankruptcy Case shall be subject to approval of the Bankruptcy Court. Subsequent to the closure of the

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251–3693

3049132.v1

Debtor's Bankruptcy Case, the Debtor shall have the ability and discretion to negotiate and consummate the settlement of any Claim without approval of the Bankruptcy Court.

**C.    Estimation of Claims**

For purposes of calculating distributions provided for under the Plan, all Claims objected to shall be estimated by the Disbursing Agent at an amount equal to (i) the amount, if any, determined by the Court pursuant to § 502(c) as an estimate for distribution purposes; (ii) an amount agreed to between the Debtor and the Claimant; or (iii) any amount set forth as an estimate in the Plan. Notwithstanding anything herein to the contrary, no distributions shall be made on account of any Claim until such Claim is an Allowed Claim.  Funds that would have otherwise been distributed to the holder of a Claim to which an objection was filed will be held by the Disbursing Agent until such time as that objection is adjudicated by the Court.

**D.    Unclaimed Funds and Interest**

Distribution to Claimants shall be mailed by the Distribution Agent to the Claimants at the address appearing on the Claimant's proof of claim, or, if no proof of claims was filed, the address included in master mailing matrix, unless the Claimant provides the Distribution Agent with an alternate address.  For a period of one year from the date that a distribution was to be made by the Distribution Agent but has gone uncollected by the Claimant, the Distribution Agent shall retain any distributions otherwise distributable hereunder that remain unclaimed or as to which the Distribution Agent has not received documents required pursuant to the Plan.  Thereafter, the unclaimed funds shall be deemed abandoned, the Claimant's Claim shall be deemed disallowed, and the unclaimed funds shall be vested in

3049132.v1

the Reorganized Debtor for use in a manner consistent with the terms of this Plan.

## XI.    NON-ALLOWANCE OF PENALTIES AND FINES

No distribution shall be made under this Plan on account of and no Allowed Claim, whether Secured, Unsecured, Administrative, or Priority, shall include any fine, penalty, exemplary or punitive damages, late charges, default interest, or other monetary charges relating to or arising from any default or breach by the Debtor, and any Claim on account thereof shall be deemed disallowed, whether or not an objection is filed.

## XII.    CLOSING OF CASE

Until this Bankruptcy Case is officially closed, the Reorganized Debtor will be responsible for filing post-confirmation reports required by the United States Trustee.  If the Plan is confirmed pursuant to Section 1191(b) of the Bankruptcy Code, the Reorganized Debtor may move the Court to administratively close the Bankruptcy Case, subject to reopening if and when entry of a discharge is appropriate.

## XIII.    MODIFICATION OF THE PLAN

Without limiting its modification rights under Bankruptcy Code section 1193, the Debtor may amend or modify this Plan at any time prior to Confirmation without leave of the Court.  The Reorganized Debtor may propose amendments and/or modifications of this Plan at any time subsequent to Confirmation with leave of the Court and upon notice to Creditors.  After Confirmation of the Plan, the Reorganized Debtor may, with approval of the Court, as long as it does not materially or adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies in the Plan, or in the Confirmation Order, if any may be necessary to carry out the purposes or intent of this Plan.

3049132.v1

## XIV.   REMEDIES FOR NON-PAYMENT

Upon default of any of the payment provisions contained in the Debtor's Plan, any Creditor not receiving the payments to which it is entitled may file a motion to reopen the Bankruptcy Case and a notice of plan default with the Bankruptcy Court, and thereafter seek entry of an order by the Bankruptcy Court (a) authorizing such Creditor to foreclose upon any collateral securing its Claim, (b) revoking confirmation of the Plan, (c) converting the Bankruptcy Case to proceedings under Chapter 7 of the Bankruptcy Code, and/or (d) authorizing any other remedy available at law or in equity.

## XV.   JURISDICTION OF THE COURT

The Court will retain jurisdiction until this Plan has been fully consummated for, including but not limited to, the following purposes:

1.   To determine the classification of the Claims of any Creditors and the re-examination of any Claims that have been allowed for the purposes of voting, and for the determination of such objections as may be filed to the Creditor's Claims.

2.   To determine any Claims that are disputed by the Debtor or the Reorganized Debtor, whether such objections are filed before or after Confirmation, and to estimate any Unliquidated or Contingent Claims pursuant to Bankruptcy Code section 502(c)(1) upon request of the Debtor or any holder of a Contingent or Unliquidated Claim, and to make determinations regarding any objection to such Claim.

3.   To determine all questions and disputes regarding title to the assets of the Estate, and to determine and adjudicate all causes of action, controversies, disputes or conflicts, whether or not subject to action pending as of the date of Confirmation, between

3049132.v1

the Debtor and any other party, including but not limited to, any rights of the Debtor or the Reorganized Debtor to recover assets pursuant to the provisions of the Bankruptcy Code.

4.     To correct any defect, cure any omission or make any reconciliation of any inconsistencies in this Plan, or the Confirmation Order, as may be necessary to carry out the purposes and intent of this Plan.

5.     To address and approve any proposed modification of this Plan after Confirmation, pursuant to the Bankruptcy Rules and the Bankruptcy Code.

6.     To enforce, interpret, and promote the effectuation of the terms and conditions of this Plan.

7.     To enter any order, including injunctions, necessary to enforce the title, rights, and powers of the Debtor or the Reorganized Debtor, and to impose such limitations, restrictions, terms, and conditions of such title, right, and power that this Court may deem necessary.

8.     To hear, determine, and resolve any disputes that may arise in connection with the Reorganized Debtor's efforts to market, manage, operate, finance, or sell any of the Debtor's property, and the manner in which any resulting proceeds are distributed.

9.     To enter an order closing this Bankruptcy Case, and thereafter enter an order reopening this Bankruptcy Case.

10.    To consider and adjudicate any request by the Reorganized Debtor for the entry of a discharge.

3049132.v1

## XVI.   RETENTION AND ENFORCEMENT OF CLAIMS

Pursuant to Bankruptcy Code section 1123(b)(3), the Reorganized Debtor shall retain and may enforce any and all claims of the Debtor, except those claims specifically waived herein.  The retained causes of action include, but are not limited to, all avoidance actions, fraudulent conveyance actions, preference actions, and all other claims and causes of action of every kind and nature whatsoever, arising before the Effective Date that have not been resolved or disposed of prior to the Effective Date, whether or not such claims or causes of action are specifically identified in this Plan.  Except as expressly set forth herein, the Debtor does not intend to waive or relinquish any cause of action by way of this Plan, and reserve the right to file a supplement to the Plan prior to Confirmation describing any causes of action the Debtor desires to specifically identify prior to Confirmation.

## XVII. EXCULPATION AND LIMITATION OF LIABILITY

Neither the Debtor nor the Trustee, nor any of its respective members, officers, directors, managers, attorneys, accountants or agents (the "Exculpated Parties" and each, an "Exculpated Party") shall have or incur any liability to any holder of a Claim or Interest, or to any other person or entity, for any post-petition act or omission in connection with, relating to, or arising out of, the Debtor's Bankruptcy Case or any adversary proceeding or contested matter commenced therein, the formulation, negotiation, implementation, confirmation or consummation of the Plan, or any contract, instrument, release or other agreement or document entered into during the Bankruptcy Case or otherwise created in connection with the Plan, the administration of the Plan or the property to be distributed under the Plan; provided, however, that nothing in this Section shall be construed to release or exculpate any

26

3049132.v1

Exculpated Party from willful misconduct, fraud or gross negligence as determined by a Final Order of the Bankruptcy Court.

## XVIII.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor shall assume all executory contracts and unexpired leases that are listed by the Debtor on its Official Form 206G, Schedule G, as ultimately amended. Notwithstanding anything herein to the contrary, although the Debtor will assume the Lease, the Debtor objects to various amounts asserted by the Landlord to be owed thereunder, including but not limited to, liquidated damages. The Debtor, in connection with the assumption of the Lease, will pay the Landlord the amount, and on the schedule, established by the Court.

## XIX.  REVESTING

Except as provided for in the Plan or in the Confirmation Order, on the Effective Date the Reorganized Debtor shall be vested with all property of its Estate free and clear of all liens, claims, charges, and other interests of Creditors arising prior to the Effective Date.

## XX.   DEBTOR'S RECOMMENDATION REGARDING THE PLAN

The Debtor recommends that all Creditors entitled to vote to accept the Plan do so. The Debtor's Plan will pay Creditors in full, which is at least as much as they would receive if the Plan is not confirmed.  The most likely alternatives to confirmation of the Plan would be conversion of the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code or dismissal, and neither of these options would serve to benefit the Debtor's creditor body as a whole.  A conversion to Chapter 7 would result in the potential for a reduced distribution to Secured and Unsecured Creditors.  Dismissal of the Bankruptcy Case would likely result

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

3049132.v1

1  in litigation, foreclosure, and execution on the Debtor's property, which would likely force

2  the Debtor out of business and harm the prospects of any meaningful return to creditors.  For

3  all these reasons, the Debtor urges you to vote to accept its Plan.

4

5          DATED:  June 21, 2021.

6

7                                                      SACKS TIERNEY P.A.

8

9                                    By: _____

10                                         Wesley D. Ray
                                          Philip R. Rudd
11                                         Sierra M. Minder
                                          Attorneys for Debtor
12

13  **COPY** of the foregoing mailed (or served
    via electronic notification if indicated by
14  an "*") on June 21, 2021, to:

15  Patty Chan * Patty.Chan@usdoj.gov          Christopher C. Simpson *
    OFFICE OF THE U.S. TRUSTEE                 csimpson@omlaw.com
16  230 N. First Ave., Ste. 204                OSBORN MALEDON, P.A.
    Phoenix, AZ  85003-1706                    2929 N. Central Ave., 21st Floor
17                                             Phoenix, AZ  85012
                                              *Subchapter V Trustee*
18

19  Bradley D. Pack * bdp@eblawyers.com        Christopher J. Dawes *
    ENGLEMAN BERGER, P.C.                      cdawes@foxrothschild.com
20  2800 North Central Ave., Ste. 1200         Heather L. Ries * hries@foxrothschild.com
    Phoenix, AZ  85004                         FOX ROTHSCHILD LLP
21  *Attorneys for BSV Lamont JCRS, LLC*       1225 17th Street, Suite 2200
                                              Denver, CO  80202
22                                             *Attorneys for BSV Lamont JCRS, LLC*

23  Lamar Hawkins * lamar@guidant.law          Patrick F. Keery * pfk@keerymccue.com
    GUIDANT LAW FIRM                           KERRY MCCUE, PLLC
24  402 E. Southern Avenue                     6803 E. Main Street, Ste. 1116
    Tempe, AZ  85282                           Scottsdale, AZ  85251
25  *Attorneys for Save Casa Bonita, LLC*      *Attorneys for 6715 W. Colfax, LLC*

26

27

28  By: */s/ Cathie Bernales*_____

SACKS TIERNEY  P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

3049132.v1

Exhibit A

## SUMMIT FAMILY RESTAURANTS INC.
### PROFIT & LOSS PROJECTIONS (CASH FLOW)

| Period Start Date | 1/26/21 P1 FY22 | 2/23/21 P2 FY22 | 3/23/21 P3 FY22 | 4/20/21 P4 FY22 | 5/18/21 P5 FY22 | 6/15/21 P6 FY22 | 7/13/21 P7 FY22 | 8/10/21 P8 FY22 | 9/7/21 P9 FY22 | 10/5/21 P10 FY22 | 11/2/21 P11 FY22 | 11/30/21 P12 FY22 | 12/28/21 P13 FY22 | Fiscal 2022 Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Gross Sales | - | - | - | - | - | - | 887,816 | 497,435 | 400,495 | 407,285 | 354,857 | 421,801 | 474,496 | 3,444,184 |
| Discounts | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Net Sales | - | - | - | - | - | - | 887,816 | 497,435 | 400,495 | 407,285 | 354,857 | 421,801 | 474,496 | 3,444,184 |
| Food Cost | - | - | - | - | - | - | 227,194 | 103,267 | 97,177 | 77,667 | 86,856 | 109,375 | 119,948 | 821,483 |
| Hourly Labor | - | - | - | 1,600 | 7,800 | 38,800 | 233,773 | 167,161 | 145,926 | 143,779 | 140,758 | 156,840 | 179,559 | 1,215,997 |
| Management | - | - | - | 2,400 | 3,200 | 3,200 | 41,862 | 41,862 | 16,862 | 16,862 | 16,862 | 16,896 | 16,929 | 176,936 |
| Benefits | - | - | - | 200 | 550 | 2,100 | 38,341 | 38,341 | 20,516 | 20,430 | 19,338 | 23,128 | 26,685 | 189,629 |
| Total Labor | - | - | - | 4,200 | 11,550 | 44,100 | 313,976 | 247,365 | 183,304 | 181,072 | 176,958 | 196,864 | 223,174 | 1,582,563 |
| Entertainment | - | - | - | - | - | - | 5,249 | 2,993 | 2,997 | 3,120 | 2,951 | 2,957 | 2,502 | 22,770 |
| Advertising | - | - | - | - | - | - | 3,551 | 1,990 | 440 | 450 | 1,419 | 1,687 | 8,142 | 17,680 |
| Utilities | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 11,000 | 27,000 | 27,000 | 27,000 | 27,000 | 27,000 | 27,000 | 27,000 | 250,000 |
| Controllables | - | - | - | - | - | - | 58,394 | 43,915 | 28,469 | 25,933 | 27,490 | 29,815 | 37,663 | 251,678 |
| Unit Profit $ | (10,000) | (10,000) | (10,000) | (14,200) | (21,550) | (55,100) | 252,451 | 70,905 | 61,107 | 92,043 | 32,183 | 54,102 | 56,068 | 498,010 |
| Other Income (PPP) (1) | | | | | | | | | | | | | 1,001,563 | 1,001,563 |
| Interest/Legal | | | | | | | 11,494 | 11,494 | 11,494 | 11,494 | 11,494 | 11,494 | 11,494 | 80,458 |
| Fixed & Occ. | 33,947 | 33,947 | 33,947 | 33,947 | 33,947 | 33,947 | 49,927 | 35,525 | 37,210 | 35,744 | 35,799 | 35,453 | 32,579 | 465,919 |
| Operating Profit | (43,947) | (43,947) | (43,947) | (48,147) | (55,497) | (89,047) | 191,030 | 23,886 | 12,404 | 44,805 | (15,110) | 7,155 | 1,013,558 | 953,196 |
| CAPEX | - | - | - | - | - | 100,000 | 13,000 | 7,000 | 6,000 | 6,000 | 5,000 | 6,000 | 7,000 | 150,000 |
| Depr. & Amort | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 43,421 |
| Projected Disposal Inc. | (40,607) | (40,607) | (40,607) | (44,807) | (52,157) | (185,707) | 181,371 | 20,226 | 9,744 | 42,146 | (16,770) | 4,495 | 8,335 | (154,946) |
| Starting Cash Balance | | | | | | 855,968 | 670,261 | 851,632 | 871,858 | 500,064 | 541,479 | 523,978 | 527,742 | |
| Curing of Lease | | | | | | - | - | - | 354,898 | - | - | - | - | 354,898 |
| Payments to Secured | | | | | | | | | | | | | | |
|   IRS | | | | | | - | - | - | 16,418 | - | - | - | 16,272 | 32,690 |
|   Jefferson County | | | | | | - | - | - | 2,049 | - | - | - | 2,031 | 4,080 |
|   SBA | | | | | | - | - | - | 731 | 731 | 731 | 731 | 731 | 3,655 |
| Payments to Unsecured | | | | | | - | - | - | 7,441 | - | - | - | 7,390 | 14,831 |
| Ending Cash Balance | | | | | | 670,261 | 851,632 | 871,858 | 500,064 | 541,479 | 523,978 | 527,742 | 509,653 | |

(1) Assumes 100% qualified expenses for PPP loan (P7 opening).
All Periods are 28 days except Period 13 of Fiscal 2022 is 35 days.

## SUMMIT FAMILY RESTAURANTS INC.
### PROFIT & LOSS PROJECTIONS (CASH FLOW)

| Period Start Date | 2/1/22 P1 FY23 | 3/1/22 P2 FY23 | 3/29/22 P3 FY23 | 4/26/22 P4 FY23 | 5/24/22 P5 FY23 | 6/21/22 P6 FY23 | 7/19/22 P7 FY23 | 8/16/22 P8 FY23 | 9/13/22 P9 FY23 | 10/11/22 P10 FY23 | 11/8/22 P11 FY23 | 12/6/22 P12 FY23 | 1/3/23 P13 FY23 | Fiscal 2023 Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Gross Sales | 425,000 | 620,000 | 550,000 | 460,000 | 650,000 | 850,000 | 890,000 | 500,000 | 400,000 | 405,000 | 355,000 | 420,000 | 475,000 | 7,000,000 |
| Discounts | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Net Sales | 425,000 | 620,000 | 550,000 | 460,000 | 650,000 | 850,000 | 890,000 | 500,000 | 400,000 | 405,000 | 355,000 | 420,000 | 475,000 | 7,000,000 |
| Food Cost | 102,000 | 148,800 | 132,000 | 110,400 | 156,000 | 204,000 | 213,600 | 120,000 | 96,000 | 97,200 | 85,200 | 100,800 | 114,000 | 1,680,000 |
| Hourly Labor | 136,000 | 198,400 | 176,000 | 147,200 | 208,000 | 272,000 | 284,800 | 160,000 | 128,000 | 129,600 | 113,600 | 134,400 | 152,000 | 2,240,000 |
| Management | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 227,500 |
| Benefits | 20,188 | 29,450 | 26,125 | 21,850 | 30,875 | 40,375 | 42,275 | 23,750 | 19,000 | 19,238 | 16,863 | 19,950 | 22,563 | 332,500 |
| Total Labor | 173,688 | 245,350 | 219,625 | 186,550 | 256,375 | 329,875 | 344,575 | 201,250 | 164,500 | 166,338 | 147,963 | 171,850 | 192,063 | 2,800,000 |
| Entertainment | 2,975 | 4,340 | 3,850 | 3,220 | 4,550 | 5,950 | 6,230 | 3,500 | 2,800 | 2,835 | 2,485 | 2,940 | 3,325 | 49,000 |
| Advertising | 2,125 | 3,100 | 2,750 | 2,300 | 3,250 | 4,250 | 4,450 | 2,500 | 2,000 | 2,025 | 1,775 | 2,100 | 2,375 | 35,000 |
| Utilities | 22,500 | 22,500 | 22,500 | 22,500 | 27,000 | 27,000 | 27,000 | 21,000 | 21,000 | 21,000 | 22,000 | 22,000 | 22,000 | 300,000 |
| Controllables | 31,875 | 46,500 | 41,250 | 34,500 | 48,750 | 63,750 | 66,750 | 37,500 | 30,000 | 30,375 | 26,625 | 31,500 | 35,625 | 525,000 |
| Unit Profit $ | 89,838 | 149,410 | 128,025 | 100,530 | 154,075 | 215,175 | 227,395 | 114,250 | 83,700 | 85,228 | 68,953 | 88,810 | 105,613 | 1,611,000 |
| Other Income (PPP) (1) | | | | | | | | | | | | | | - |
| Interest/Legal | 6,494 | 6,460 | 6,426 | 6,392 | 6,359 | 6,325 | 6,291 | 6,256 | 6,222 | 6,188 | 6,153 | 6,119 | 6,084 | 81,769 |
| Fixed & Occ. | 39,756 | 41,063 | 40,594 | 39,991 | 41,264 | 42,604 | 42,872 | 40,259 | 39,589 | 39,622 | 39,287 | 39,723 | 40,091 | 526,711 |
| Operating Profit | 43,587 | 101,887 | 81,005 | 54,147 | 106,452 | 166,246 | 178,232 | 67,735 | 37,889 | 39,417 | 23,512 | 42,968 | 59,437 | 1,002,520 |
| CAPEX | 7,500 | 11,250 | 10,000 | 8,750 | 11,250 | 15,000 | 16,250 | 8,750 | 7,500 | 7,500 | 6,250 | 7,500 | 7,500 | 125,000 |
| Depr. & Amort. | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 43,421 |
| Projected Disposal Inc. | 39,428 | 93,978 | 74,346 | 48,738 | 98,543 | 154,587 | 165,323 | 62,326 | 33,730 | 35,258 | 20,603 | 38,809 | 55,278 | 920,941 |
| Starting Cash Balance | 509,653 | 548,350 | 641,596 | 689,734 | 737,740 | 835,552 | 964,146 | 1,128,738 | 1,190,332 | 1,198,287 | 1,232,813 | 1,252,685 | 1,266,666 | |
| Curing of Lease | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Payments to Secured | | | | | | | | | | | | | | |
| IRS | - | - | 16,125 | - | - | 15,978 | - | - | 15,832 | - | - | 15,685 | - | 63,620 |
| Jefferson County | - | - | 2,013 | - | - | 1,995 | - | - | 1,976 | - | - | 1,958 | - | 7,942 |
| SBA | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | - | 731 | 8,772 |
| Payments to Unsecured | - | - | 7,339 | - | - | 7,288 | - | - | 7,236 | - | - | 7,185 | - | 29,048 |
| Ending Cash Balance | 548,350 | 641,596 | 689,734 | 737,740 | 835,552 | 964,146 | 1,128,738 | 1,190,332 | 1,198,287 | 1,232,813 | 1,252,685 | 1,266,666 | 1,321,212 | |

(1) Assumes 100% qualified expenses for PPP loan (P7 opening).

All Periods are 28 days except Period 13 of Fiscal 2022 is 35 days.

## SUMMIT FAMILY RESTAURANTS INC.
### PROFIT & LOSS PROJECTIONS (CASH FLOW)

| Period Start Date | 1/31/23 P1 FY24 | 2/28/23 P2 FY24 | 3/28/23 P3 FY24 | 4/25/23 P4 FY24 | 5/23/23 P5 FY24 | 6/20/23 P6 FY24 | 7/18/23 P7 FY24 | 8/15/23 P8 FY24 | 9/12/23 P9 FY24 | 10/10/23 P10 FY24 | 11/7/23 P11 FY24 | 12/5/23 P12 FY24 | 1/2/24 P13 FY24 | Fiscal 2024 Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Gross Sales | 425,000 | 620,000 | 550,000 | 460,000 | 650,000 | 850,000 | 890,000 | 500,000 | 400,000 | 405,000 | 355,000 | 420,000 | 475,000 | 7,000,000 |
| Discounts | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Net Sales | 425,000 | 620,000 | 550,000 | 460,000 | 650,000 | 850,000 | 890,000 | 500,000 | 400,000 | 405,000 | 355,000 | 420,000 | 475,000 | 7,000,000 |
| Food Cost | 102,000 | 148,800 | 132,000 | 110,400 | 156,000 | 204,000 | 213,600 | 120,000 | 96,000 | 97,200 | 85,200 | 100,800 | 114,000 | 1,680,000 |
| Hourly Labor | 136,000 | 198,400 | 176,000 | 147,200 | 208,000 | 272,000 | 284,800 | 160,000 | 128,000 | 129,600 | 113,600 | 134,400 | 152,000 | 2,240,000 |
| Management | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 227,500 |
| Benefits | 20,188 | 29,450 | 26,125 | 21,850 | 30,875 | 40,375 | 42,275 | 23,750 | 19,000 | 19,238 | 16,863 | 19,950 | 22,563 | 332,500 |
| Total Labor | 173,688 | 245,350 | 219,625 | 186,550 | 256,375 | 329,875 | 344,575 | 201,250 | 164,500 | 166,338 | 147,963 | 171,850 | 192,063 | 2,800,000 |
| Entertainment | 2,975 | 4,340 | 3,850 | 3,220 | 4,550 | 5,950 | 6,230 | 3,500 | 2,800 | 2,835 | 2,485 | 2,940 | 3,325 | 49,000 |
| Advertising | 2,125 | 3,100 | 2,750 | 2,300 | 3,250 | 4,250 | 4,450 | 2,500 | 2,000 | 2,025 | 1,775 | 2,100 | 2,375 | 35,000 |
| Utilities | 22,500 | 22,500 | 22,500 | 22,500 | 27,000 | 27,000 | 27,000 | 21,000 | 21,000 | 21,000 | 22,000 | 22,000 | 22,000 | 300,000 |
| Controllables | 31,875 | 46,500 | 41,250 | 34,500 | 48,750 | 63,750 | 66,750 | 37,500 | 30,000 | 30,375 | 26,625 | 31,500 | 35,625 | 525,000 |
| Unit Profit $ | 89,838 | 149,410 | 128,025 | 100,530 | 154,075 | 215,175 | 227,395 | 114,250 | 83,700 | 85,228 | 68,953 | 88,810 | 105,613 | 1,611,000 |
| Other Income (PPP) (1) | | | | | | | | | | | | | | - |
| Interest/Legal | 6,067 | 6,050 | 6,032 | 6,015 | 5,997 | 5,980 | 5,962 | 5,945 | 5,927 | 5,909 | 5,892 | 5,874 | 5,856 | 77,506 |
| Fixed & Occ. | 42,455 | 43,761 | 43,292 | 42,689 | 43,962 | 45,302 | 45,570 | 42,957 | 42,387 | 42,421 | 42,086 | 42,521 | 41,319 | 560,726 |
| Operating Profit | 41,316 | 99,599 | 78,701 | 51,826 | 104,116 | 163,893 | 175,863 | 65,348 | 35,386 | 36,898 | 20,975 | 40,415 | 58,438 | 972,768 |
| CAPEX | 7,500 | 11,250 | 10,000 | 8,750 | 11,250 | 15,000 | 16,250 | 8,750 | 7,500 | 7,500 | 6,250 | 7,500 | 7,500 | 125,000 |
| Depr. & Amort | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 43,421 |
| Projected Disposal Inc. | 37,156 | 91,689 | 72,041 | 46,416 | 96,206 | 152,233 | 162,953 | 59,938 | 31,226 | 32,738 | 18,065 | 36,255 | 54,278 | 891,189 |
| Starting Cash Balance | 1,321,212 | 1,357,637 | 1,448,594 | 1,519,904 | 1,540,676 | 1,636,150 | 1,763,256 | 1,925,478 | 1,984,684 | 1,990,998 | 2,023,004 | 2,040,338 | 2,052,629 | |
| Curing of Lease | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Payments to Secured | | | | | | | | | | | | | | |
| IRS | - | - | - | 15,839 | - | 15,392 | - | - | 15,246 | - | - | 15,099 | - | 61,576 |
| Jefferson County | - | - | - | 1,940 | - | 1,921 | - | - | 1,903 | - | - | 1,885 | - | 7,649 |
| SBA | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | - | 731 | 8,772 |
| Payments to Unsecured | - | - | - | 7,134 | - | 7,083 | - | - | 7,032 | - | - | 6,980 | - | 28,229 |
| Ending Cash Balance | 1,357,637 | 1,448,594 | 1,519,904 | 1,540,676 | 1,636,150 | 1,763,256 | 1,925,478 | 1,984,684 | 1,990,998 | 2,023,004 | 2,040,338 | 2,052,629 | 2,106,175 | |

(1) Assumes 100% qualified expenses for PPP loan (P7 opening).

All Periods are 28 days except Period 13 of Fiscal 2022 is 35 days.

## SUMMIT FAMILY RESTAURANTS INC.
### PROFIT & LOSS PROJECTIONS (CASH FLOW)

| Period Start Date | 1/30/24 P1 FY25 | 2/27/24 P2 FY25 | 3/26/24 P3 FY25 | 4/23/24 P4 FY25 | 5/21/24 P5 FY25 | 6/18/24 P6 FY25 | 7/16/24 P7 FY25 | 8/13/24 P8 FY25 | 9/10/24 P9 FY25 | 10/8/24 P10 FY25 | 11/5/24 P11 FY25 | 12/3/24 P12 FY25 | 12/31/24 P13 FY25 | Fiscal 2025 Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Gross Sales | 425,000 | 620,000 | 550,000 | 460,000 | 650,000 | 850,000 | 890,000 | 500,000 | 400,000 | 405,000 | 355,000 | 420,000 | 475,000 | 7,000,000 |
| Discounts | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Net Sales | 425,000 | 620,000 | 550,000 | 460,000 | 650,000 | 850,000 | 890,000 | 500,000 | 400,000 | 405,000 | 355,000 | 420,000 | 475,000 | 7,000,000 |
| Food Cost | 102,000 | 148,800 | 132,000 | 110,400 | 156,000 | 204,000 | 213,600 | 120,000 | 96,000 | 97,200 | 85,200 | 100,800 | 114,000 | 1,680,000 |
| Hourly Labor | 136,000 | 198,400 | 176,000 | 147,200 | 208,000 | 272,000 | 284,800 | 160,000 | 128,000 | 129,600 | 113,600 | 134,400 | 152,000 | 2,240,000 |
| Management | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 227,500 |
| Benefits | 20,188 | 29,450 | 26,125 | 21,850 | 30,875 | 40,375 | 42,275 | 23,750 | 19,000 | 19,238 | 16,863 | 19,950 | 22,563 | 332,500 |
| Total Labor | 173,688 | 245,350 | 219,625 | 186,550 | 256,375 | 329,875 | 344,575 | 201,250 | 164,500 | 166,338 | 147,963 | 171,850 | 192,063 | 2,800,000 |
| Entertainment | 2,975 | 4,340 | 3,850 | 3,220 | 4,550 | 5,950 | 6,230 | 3,500 | 2,800 | 2,835 | 2,485 | 2,940 | 3,325 | 49,000 |
| Advertising | 2,125 | 3,100 | 2,750 | 2,300 | 3,250 | 4,250 | 4,450 | 2,500 | 2,000 | 2,025 | 1,775 | 2,100 | 2,375 | 35,000 |
| Utilities | 22,500 | 22,500 | 22,500 | 22,500 | 27,000 | 27,000 | 27,000 | 21,000 | 21,000 | 21,000 | 22,000 | 22,000 | 22,000 | 300,000 |
| Controllables | 31,875 | 46,500 | 41,250 | 34,500 | 48,750 | 63,750 | 66,750 | 37,500 | 30,000 | 30,375 | 26,625 | 31,500 | 35,625 | 525,000 |
| Unit Profit $ | 89,838 | 149,410 | 128,025 | 100,530 | 154,075 | 215,175 | 227,395 | 114,250 | 83,700 | 85,228 | 68,953 | 88,810 | 105,613 | 1,611,000 |
| Other Income (PPP) (1) | | | | | | | | | | | | | | - |
| Interest/Legal | 5,838 | 5,820 | 5,802 | 5,784 | 5,766 | 5,748 | 5,729 | 5,711 | 5,693 | 5,674 | 5,656 | 5,638 | 5,619 | 74,478 |
| Fixed & Occ. | 42,455 | 44,761 | 44,292 | 42,689 | 43,962 | 46,302 | 46,570 | 43,957 | 43,387 | 43,421 | 42,086 | 42,521 | 41,890 | 568,297 |
| Operating Profit | 41,545 | 98,829 | 77,931 | 52,057 | 104,347 | 163,125 | 175,096 | 64,582 | 34,620 | 36,133 | 21,211 | 40,651 | 58,104 | 968,225 |
| CAPEX | 7,500 | 11,250 | 10,000 | 8,750 | 11,250 | 15,000 | 16,250 | 8,750 | 7,500 | 7,500 | 6,250 | 7,500 | 7,500 | 125,000 |
| Depr. & Amort | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 43,421 |
| Projected Disposal Inc. | 37,385 | 90,919 | 71,271 | 46,647 | 96,437 | 151,465 | 162,186 | 59,172 | 30,460 | 31,973 | 18,301 | 36,491 | 53,944 | 886,646 |
| Starting Cash Balance | 2,106,175 | 2,142,829 | 2,233,017 | 2,303,556 | 2,325,725 | 2,421,431 | 2,548,632 | 2,710,087 | 2,768,528 | 2,774,940 | 2,806,182 | 2,823,751 | 2,860,242 | |
| Curing of Lease | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Payments to Secured | | | | | | | | | | | | | | |
| IRS | - | - | - | 14,952 | - | 14,806 | - | - | 14,659 | - | - | - | - | 44,417 |
| Jefferson County | - | - | - | 1,866 | - | 1,848 | - | - | 1,830 | - | - | - | - | 5,544 |
| SBA | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | - | 731 | 8,772 |
| Payments to Unsecured | - | - | - | 6,929 | - | 6,878 | - | - | 6,827 | - | - | - | - | 20,634 |
| Ending Cash Balance | 2,142,829 | 2,233,017 | 2,303,556 | 2,325,725 | 2,421,431 | 2,548,632 | 2,710,087 | 2,768,528 | 2,774,940 | 2,806,182 | 2,823,751 | 2,860,242 | 2,913,455 | |

(1) Assumes 100% qualified expenses for PPP loan (P7 opening).

All Periods are 28 days except Period 13 of Fiscal 2022 is 35 days.

## SUMMIT FAMILY RESTAURANTS INC.
### PROFIT & LOSS PROJECTIONS (CASH FLOW)

| Period Start Date | 1/28/25 P1 FY26 | 2/25/25 P2 FY26 | 3/25/25 P3 FY26 | 4/22/25 P4 FY26 | 5/20/25 P5 FY26 | 6/17/25 P6 FY26 | 7/15/25 P7 FY26 | 8/12/25 P8 FY26 | 9/9/25 P9 FY26 | 10/7/25 P10 FY26 | 11/4/25 P11 FY26 | 12/2/25 P12 FY26 | 12/30/25 P13 FY26 | Fiscal 2026 Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Gross Sales | 425,000 | 620,000 | 550,000 | 460,000 | 650,000 | 850,000 | 890,000 | 500,000 | 400,000 | 405,000 | 355,000 | 420,000 | 475,000 | 7,000,000 |
| Discounts | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Net Sales | 425,000 | 620,000 | 550,000 | 460,000 | 650,000 | 850,000 | 890,000 | 500,000 | 400,000 | 405,000 | 355,000 | 420,000 | 475,000 | 7,000,000 |
| Food Cost | 102,000 | 148,800 | 132,000 | 110,400 | 156,000 | 204,000 | 213,600 | 120,000 | 96,000 | 97,200 | 85,200 | 100,800 | 114,000 | 1,680,000 |
| Hourly Labor | 136,000 | 198,400 | 176,000 | 147,200 | 208,000 | 272,000 | 284,800 | 160,000 | 128,000 | 129,600 | 113,600 | 134,400 | 152,000 | 2,240,000 |
| Management | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 227,500 |
| Benefits | 20,188 | 29,450 | 26,125 | 21,850 | 30,875 | 40,375 | 42,275 | 23,750 | 19,000 | 19,238 | 16,863 | 19,950 | 22,563 | 332,500 |
| Total Labor | 173,688 | 245,350 | 219,625 | 186,550 | 256,375 | 329,875 | 344,575 | 201,250 | 164,500 | 166,338 | 147,963 | 171,850 | 192,063 | 2,800,000 |
| Entertainment | 2,975 | 4,340 | 3,850 | 3,220 | 4,550 | 5,950 | 6,230 | 3,500 | 2,800 | 2,835 | 2,485 | 2,940 | 3,325 | 49,000 |
| Advertising | 2,125 | 3,100 | 2,750 | 2,300 | 3,250 | 4,250 | 4,450 | 2,500 | 2,000 | 2,025 | 1,775 | 2,100 | 2,375 | 35,000 |
| Utilities | 22,500 | 22,500 | 22,500 | 22,500 | 27,000 | 27,000 | 27,000 | 21,000 | 21,000 | 21,000 | 22,000 | 22,000 | 22,000 | 300,000 |
| Controllables | 31,875 | 46,500 | 41,250 | 34,500 | 48,750 | 63,750 | 66,750 | 37,500 | 30,000 | 30,375 | 26,625 | 31,500 | 35,625 | 525,000 |
| Unit Profit $ | 89,838 | 149,410 | 128,025 | 100,530 | 154,075 | 215,175 | 227,395 | 114,250 | 83,700 | 85,228 | 68,953 | 88,810 | 105,613 | 1,611,000 |
| Other Income (PPP) (1) | | | | | | | | | | | | | | - |
| Interest/Legal | 5,601 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 65,601 |
| Fixed & Occ. | 43,455 | 44,761 | 44,292 | 43,689 | 44,962 | 47,302 | 47,570 | 43,957 | 43,387 | 43,421 | 42,086 | 43,521 | 41,890 | 574,297 |
| Operating Profit | 40,782 | 99,649 | 78,733 | 51,841 | 104,113 | 162,873 | 174,825 | 65,293 | 35,313 | 36,807 | 21,867 | 40,289 | 58,723 | 971,102 |
| CAPEX | 7,500 | 11,250 | 10,000 | 8,750 | 11,250 | 15,000 | 16,250 | 8,750 | 7,500 | 7,500 | 6,250 | 7,500 | 7,500 | 125,000 |
| Depr. & Amort | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 43,421 |
| Projected Disposal Inc. | 36,622 | 91,739 | 72,073 | 46,431 | 96,203 | 151,213 | 161,915 | 59,883 | 31,153 | 32,647 | 18,957 | 36,129 | 54,563 | 889,523 |
| Starting Cash Balance | 2,913,455 | 2,949,345 | 3,040,353 | 3,111,695 | 3,157,394 | 3,252,866 | 3,403,348 | 3,564,531 | 3,623,683 | 3,654,104 | 3,686,020 | 3,704,246 | 3,740,374 | |
| Curing of Lease | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Payments to Secured | | | | | | | | | | | | | | |
| IRS | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Jefferson County | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| SBA | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | - | 731 | 8,772 |
| Payments to Unsecured | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Ending Cash Balance | 2,949,345 | 3,040,353 | 3,111,695 | 3,157,394 | 3,252,866 | 3,403,348 | 3,564,531 | 3,623,683 | 3,654,104 | 3,686,020 | 3,704,246 | 3,740,374 | 3,794,206 | |

(1) Assumes 100% qualified expenses for PPP loan (P7 opening).
All Periods are 28 days except Period 13 of Fiscal 2022 is 35 days.

**SUMMIT FAMILY RESTAURANTS INC.**
PROFIT & LOSS PROJECTIONS (CASH FLOW)

| Period Start Date | 1/27/26 P1 FY27 | 2/24/26 P2 FY27 | 3/24/26 P3 FY27 | 4/21/26 P4 FY27 | 5/19/26 P5 FY27 | 6/16/26 P6 FY27 | 7/14/26 P7 FY27 | 8/11/26 P8 FY27 | 9/8/26 P9 FY27 | 10/6/26 P10 FY27 | 11/3/26 P11 FY27 | 12/1/26 P12 FY27 | 12/29/26 P13 FY27 | Fiscal 2027 Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Gross Sales | 425,000 | 620,000 | 550,000 | 460,000 | 650,000 | 850,000 | 890,000 | 500,000 | 400,000 | 405,000 | 355,000 | 420,000 | 475,000 | 7,000,000 |
| Discounts | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Net Sales | 425,000 | 620,000 | 550,000 | 460,000 | 650,000 | 850,000 | 890,000 | 500,000 | 400,000 | 405,000 | 355,000 | 420,000 | 475,000 | 7,000,000 |
| Food Cost | 102,000 | 148,800 | 132,000 | 110,400 | 156,000 | 204,000 | 213,600 | 120,000 | 96,000 | 97,200 | 85,200 | 100,800 | 114,000 | 1,680,000 |
| Hourly Labor | 136,000 | 198,400 | 176,000 | 147,200 | 208,000 | 272,000 | 284,800 | 160,000 | 128,000 | 129,600 | 113,600 | 134,400 | 152,000 | 2,240,000 |
| Management | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 227,500 |
| Benefits | 20,188 | 29,450 | 26,125 | 21,850 | 30,875 | 40,375 | 42,275 | 23,750 | 19,000 | 19,238 | 16,863 | 19,950 | 22,563 | 332,500 |
| Total Labor | 173,688 | 245,350 | 219,625 | 186,550 | 256,375 | 329,875 | 344,575 | 201,250 | 164,500 | 166,338 | 147,963 | 171,850 | 192,063 | 2,800,000 |
| Entertainment | 2,975 | 4,340 | 3,850 | 3,220 | 4,550 | 5,950 | 6,230 | 3,500 | 2,800 | 2,835 | 2,485 | 2,940 | 3,325 | 49,000 |
| Advertising | 2,125 | 3,100 | 2,750 | 2,300 | 3,250 | 4,250 | 4,450 | 2,500 | 2,000 | 2,025 | 1,775 | 2,100 | 2,375 | 35,000 |
| Utilities | 22,500 | 22,500 | 22,500 | 22,500 | 27,000 | 27,000 | 27,000 | 21,000 | 21,000 | 21,000 | 22,000 | 22,000 | 22,000 | 300,000 |
| Controllables | 31,875 | 46,500 | 41,250 | 34,500 | 48,750 | 63,750 | 66,750 | 37,500 | 30,000 | 30,375 | 26,625 | 31,500 | 35,625 | 525,000 |
| Unit Profit $ | 89,838 | 149,410 | 128,025 | 100,530 | 154,075 | 215,175 | 227,395 | 114,250 | 83,700 | 85,228 | 68,953 | 88,810 | 105,613 | 1,611,000 |
| Other Income (PPP) (1) | | | | | | | | | | | | | | - |
| Interest/Legal | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 65,000 |
| Fixed & Occ. | 43,455 | 44,761 | 44,292 | 43,689 | 44,962 | 47,302 | 47,570 | 43,957 | 44,387 | 44,421 | 44,086 | 44,521 | 43,059 | 580,466 |
| Operating Profit | 41,383 | 99,649 | 78,733 | 51,841 | 104,113 | 162,873 | 174,825 | 65,293 | 34,313 | 35,807 | 19,867 | 39,289 | 57,554 | 965,534 |
| CAPEX | 7,500 | 11,250 | 10,000 | 8,750 | 11,250 | 15,000 | 16,250 | 8,750 | 7,500 | 7,500 | 6,250 | 7,500 | 7,500 | 125,000 |
| Depr. & Amort | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 3,340 | 43,421 |
| Projected Disposal Inc. | 37,223 | 91,739 | 72,073 | 46,431 | 96,203 | 151,213 | 161,915 | 59,883 | 30,153 | 31,647 | 16,957 | 35,129 | 53,394 | 883,955 |
| Starting Cash Balance | 3,794,206 | 3,830,698 | 3,921,705 | 3,993,047 | 4,038,747 | 4,134,218 | 4,284,700 | 4,445,883 | 4,505,035 | 4,534,457 | 4,565,372 | 4,581,598 | 4,616,727 | |
| Curing of Lease | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Payments to Secured | | | | | | | | | | | | | | |
| IRS | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Jefferson County | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| SBA | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | - | 731 | 8,772 |
| Payments to Unsecured | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Ending Cash Balance | 3,830,698 | 3,921,705 | 3,993,047 | 4,038,747 | 4,134,218 | 4,284,700 | 4,445,883 | 4,505,035 | 4,534,457 | 4,565,372 | 4,581,598 | 4,616,727 | 4,669,389 | |

(1) Assumes 100% qualified expenses for PPP loan (P7 opening).
All Periods are 28 days except Period 13 of Fiscal 2022 is 35 days.

Exhibit B

**Summit Family Restaurants Inc.**
**Preliminary Liquidation Analysis**
As of June 21, 2021

| | Book Value | Liquidation Value | Liquidation Value Subject to Liens | Total Equity |
|---|---|---|---|---|
| **Real Property :** | | | | |
| None | | | | |
| **Personal Property:** | | | | |
| Cash | $ 855,968.00 | $ 855,968.00 | $ 855,968.00 | $ - |
| Inventories | $ 50,000.00 | $ 5,000.00 | $ 5,000.00 | $ - |
| Machinery, Equipment and Office Fixtures | $ 148,000.00 | $ 100,000.00 | $ 100,000.00 | $ - |
| **Total Values** | $ 1,053,968.00 | $ 960,968.00 | $ 960,968.00 | $ - |

**Line A. Collateral Value Available for Distribution to Secured Creditors in Chapter 7 filing**  $ **960,968.00**

**Line B. Less: Secured Creditors**  $ **352,071.37**

**Line C. Amount Available for Distribution to Unsecured Creditors in a Chapter 7 filing**  $ **608,896.63**  (Line A minus Line B)
(without accounting for fees and all of costs of adminstration)

**Line D. Total Unsecured Claims**  $ **2,355,632.65**  (1)

**Line E. Percentage of Distribution to Unsecured Claims**  **25.8%**  (Line C divided by Line D)

(1) The Unsecured Claims were calculated using the claim amounts asserted in the filed proof of claims. These values were used for hypothetical liqudation anaylsis only. The Debtor does not waive its right to dispute any proof of claim.