UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 21-13328-MER |
| SUMMIT FAMILY RESTAURANTS ) | |
| INC. ) | |
| ) | Chapter 11 |
| ) | Subchapter V |
| Debtor. ) | |

**DEBTOR'S RESPONSE TO BSV LAMONT JCRS LLC'S AMENDED OBJECTION TO DEBTOR'S SMALL BUSINESS DESIGNATION AND ELECTION TO PROCEED UNDER SUBCHAPTER V**

The Debtor, Summit Family Restaurants Inc., by and through its attorneys, Kutner Brinen Dickey Riley, P.C., hereby submits its Response to BSV Lamont JCRS LLC's Objection to Debtor's Small Business Designation and Election to Proceed Under Subchapter V and states as follows:

## BACKGROUND

The Debtor filed its Voluntary Petition pursuant to Subchapter V of Chapter 11 of the Bankruptcy Code on April 6, 2021 in the Bankruptcy Court for the District of Arizona under Case Number 21-02477-BKM. On June 23, 2021, venue of the case was transferred to the Bankruptcy Court for the District of Colorado.

Debtor operates the famous Casa Bonita restaurant, located at 6715 W. Colfax Avenue, Lakewood, Colorado 80214. Casa Bonita provides a unique dining and entertainment experience that features a Mexican-themed menu, cliff divers, stage shows, magicians, live music, three amusement arcades and a large gift shop. Casa Bonita has historically served as many as one million guests annually in one of the nation's largest restaurants in terms of size (50,837 sq. ft.) and seating capacity (1,200 patrons). Depending on the season, Casa Bonita employees between 150 to 300 individuals.

Casa Bonita has been a Colorado landmark since 1974 and Debtor has operated Casa Bonita since 1997. Casa Bonita has consistently generated revenues in excess of 6 million dollars and has been profitable on annual basis through 2019. The COVID-19 pandemic forced Casa Bonita to close its doors in 2020. As Colorado worked its way through various restrictions on capacity, Casa Bonita

remained closed for over one year. Simply put, until Casa Bonita could provide the total dining and entertainment experience, Casa Bonita could not viably reopen.

Since the State's COVID restrictions have eased, the Debtor has been working to reopen Casa Bonita. In early May 2021, the arcade and gift shop were reopened. In late May 2021, Casa Bonita's entertainment staff started providing free "backstage" tours on a daily basis during its normal business hours (Sundays through Thursdays 11AM to 9PM and on Fridays and Saturdays 11AM to 10PM). Menu service remains temporarily unavailable while its boiler system is repaired and requisite permits are obtained.

In late 2020, Debtor commenced work on Casa Bonita's boiler system that was damaged while Casa Bonita was closed. The boiler system drives Casa Bonita's power grid. Without an operational boiler system, Casa Bonita cannot provide power to its kitchen or hot water for its sanitary requirements.

Repair of the boiler system requires specialized assistance and components and was delayed by supply chain issues stemming from COVID. The boiler system repairs have been finalized. Now, the boiler system must pass inspection. Then, Casa Bonita must pass final health and fire inspections to provide menu service. Once all inspections are complete, Casa Bonita will resume menu service.

Debtor's bankruptcy case was caused by the state-mandated closure of the restaurant from COVID and due to a dispute with Casa Bonita's landlord, BSV Lamont JCRS LLC (the "Landlord"). When the Landlord moved to evict Casa Bonita, Debtor filed its case under Subchapter V in the Bankruptcy Court for the District of Arizona. As noted, the case was recently transferred to this Court.

On June 10, 2021, the Landlord filed its Objection to the Debtor's election under Subchapter V of Chapter 11. For the reasons described below, Debtor respectfully requests the Court deny the Objection and allow the Debtor to continue in Subchapter V.

## **RESPONSES TO FACTUAL ALLEGATIONS**

Landlord made a number of factual allegations therein. Debtor responds to those numbered paragraphs as follows:

1. Debtor admits the allegations in Paragraph 1.
2. Debtor admits the allegations in Paragraph 2.

3. As to the allegations in Paragraph 3, Debtor admits Casa Bonita temporarily closed its doors as a result of the COVID-19 pandemic on March 16, 2020 and that its sole source of income in revenue derived from Casa Bonita. Debtor further states, notwithstanding that fact, it was consistently engaged in business or commercial activities as defined by 11 U.S.C. § 101(51D) during that time.

4. As to the allegations in Paragraph 4, Debtor admits menu service remains closed while the boiler issue is resolved. The arcade, however, is open for business.

5. As to the allegations in Paragraph 5, Debtor admits there had been $0.00 in revenue as of the 2004 exam. Debtor has obtained some revenue from the arcade and gift shop since that time and expects to obtain significant revenues when menu service opens again.

6. The allegations in Paragraph 6 call for a legal conclusion. 11 U.S.C. § 101(51D) does not limit "commercial or business activities" to income. *See In re Ikalowych*, 2021 Bankr. LEXIS 997 (Bankr. D. Colo. April 15, 2021); *In re Port Arthur Steam Energy, L.P.*, 2021 Bankr. LEXIS 1793 (Bankr. S.D. Tex. July 1, 2021); and *In re Offer Space*, 2021 Bankr. LEXIS 1077 (Bankr. D. Utah April 22, 2021).

7. As to the allegations in Paragraph 7, 11 U.S.C. § 101(51D) requires "commercial or business activities." "Activities" is a broader term than "operations." *In re Offer Space*, 2021 Bankr. LEXIS 1077, at *7-8. A business can still be engaged in commercial or business activities despite its doors not being open. *Id*.

8. Debtor admits it applied for and received PPP funds prior to the Petition Date, which the Debtor states is a commercial or business activity. The remainder of paragraph 8 calls for a legal conclusion. The timing of the Debtor paying the Landlord's disputed cure amount is irrelevant to Subchapter V eligibility.

9. Debtor admits it has been unable to obtain short term financing. Debtor's efforts to obtain financing are "commercial or business activities," however. 11 U.S.C. § 101(51D).

10. As to the allegations in Paragraph 10, Debtor admits Casa Bonita is not presently operating menu service. As noted, Casa Bonita is taking active steps to reopening. Again, the timing of a cure of the Debtor's obligations to the Landlord are irrelevant to a question of eligibility under Subchapter V.

11. As to the allegations in Paragraph 11, Debtor states Landlord is using a prior version of 11 U.S.C. § 365(d)(4)(A) which was not the version in effect on the Petition Date. On December

27, 2020, Congress passed the Consolidated Appropriations Act of 2021. As relevant to this matter, the act temporarily amended 11 U.S.C. § 365(d)(4)(A) so debtors have 210 days to assume or reject a nonresidential lease, rather than the 120 days which existed prior to that point. Thus, Debtor's deadline to assume or reject its lease with the landlord is actually November 2, 2021. Furthermore, the timing of Debtor's efforts to cure the lease with the Landlord are irrelevant to the question of whether Debtor is eligible to be a debtor under Subchapter V.

## ARGUMENT

I. **The Debtor is eligible to proceed under Subchapter V of the Bankruptcy Code.**

Subchapter V of Chapter 11 became operational in February of 2020. Since that time, there have been a number of decisions regarding a debtor's eligibility for that subchapter.

A debtor qualifies for Subchapter V if they can show (a) they are engaged in commercial or business activities; (b) with aggregate noncontingent, liquidated, secured debts of not less than $7,500,000; and (c) not less than 50% of the debt arose from the commercial or business activities of the debtor. The Landlord only challenges eligibility on the first prong – whether the Debtor is engaged in commercial or business activities. The Landlord's argument seems to be – if the Debtor is not receiving revenue, it cannot be engaged in business or commercial activities. The weight of authority demands the opposite result.

In *In re Ikalowych*, 2021 Bankr. LEXIS 997 (Bankr. D. Colo. April 15, 2021), Judge McNamara finds: "'commercial or business activities' is a very broad and encompassing phrase." *Id.*, at *28. Whether a debtor was engaged in commercial or business activities is determined by the totality of the circumstances. *Id.*, at *39.

In *Ikalowych*, the debtor was an individual with a number of business interests. 2021 Bankr. LEXIS, *2-3. Judge McNamara found the debtor was engaged in business or commercial activities on the petition date through three categories. *Id.*, at *39. First, debtor owned 100% of a company through which debtor received passive income annually. *Id.*, at *39-41. Second, debtor owned a 30% interest in a company which had ceased operations and surrendered its assets. *Id.*, at *41. The debtor's acts in winding down the business, including "interacting with lenders and a landlord; helping cleanup and turnover lease premises; assisting with payroll; dealing with tax accountants and tax issues; organizing and storing business records; and performing some other work" were commercial or business activities. *Id.*, at *42. The wind down work was performed in the private sector, and therefore, was commercial or business activity. *Id.* Finally, debtor worked on the

petition date as a salaried employee for an insurance company. *Id*., at *47. Judge McNamara determined even the act of performing services for an employer constitutes commercial or business activities. *Id*., at *47-48. Thus, the debtor was eligible to proceed under Subchapter V.

In *In re Offer Space*, 2021 Bankr. LEXIS 1077 (Bankr. D. Utah April 22, 2021), a division of the Bankruptcy Court for the District of Utah adopted Judge McNamara's findings. In *Offer Space*, debtor filed a Subchapter V intending to liquidate its stock to pay creditors. Debtor was not operating on the petition date and its assets consisted of a bank account, accounts receivable, litigation claims against a third party, and stock. *Id*., at *3. Debtor had no employees and no intention of reorganizing. *Id*. To the contrary, debtor intended to realize value for its assets and pay creditors. *Id*.

The *Offer Space* Court found debtor was engaged in commercial or business activities as follows: it had active bank accounts, it had accounts receivable, it was analyzing and exploring its litigation claim, it was managing its stock, and it was winding down its business and taking reasonable steps to liquidate its assets and pay creditors. *In re Offer Space*, 2021 Bankr. LEXIS at *12. As a result, debtor was eligible as a debtor under Subchapter V.

*In re Port Arthur Steam Energy, L.P.*, 2021 Bankr. LEXIS 1793 (Bankr. S.D. Tex. July 1, 2021) reaches the same result. In *Port Arthur*, the debtor operated a waste heat facility. *Id*., at *1. Prior to the petition date, debtor was involved in a dispute with a party to whom it sold electricity. *Id*., at *2. While debtor was not selling steam or electricity on the petition date, it was involved in litigation, its facility was maintained by a contract employee and two members of debtor's limited partner, prior to the petition date, debtor worked on a plan to sell all of its assets in a Chapter 11 plan, debtor sold an asset worth $35,000.00 in the months prior to the petition date, and debtor filed reports and tax returns. *Id*., at *7.

Like in the other cases cited here, the *Port Arthur* Court found debtor was engaged in sufficient business or commercial activities to proceed as a debtor under Subchapter V, notwithstanding a lack of current revenue.

This case demands the same result. Unlike in *Offer Space* and *Port Arthur*, Debtor's closure of Casa Bonita is temporary. The purpose of Debtor's bankruptcy case is to allow Debtor to reopen Casa Bonita for menu service and entertainment, and use its revenues to repay creditors. If a liquidating Chapter 11 qualifies as a commercial or business activity under the 11 U.S.C. §

101(51D), a plan which provides for a debtor reopening its doors, reorganizing its business operations, and repaying creditors also qualifies as a "commercial or business activity."

Additionally, on the Petition Date, Debtor, among other things: maintained active bank accounts, had recently obtained PPP funding to float it through its COVID related closures, was working to reopen the arcade and gift shop, was working to have the boiler repaired, interacted with the Landlord, and was dealing with various litigation. Based on the holdings in *Ikalowych*, *Offer Space*, and *Port Arthur*, the Debtor was engaged in sufficient business or commercial activities to qualify as a debtor under Subchapter V, and the Landlord's motion should be denied.

Each of the courts in *Ikalowych*, *Offer Space*, and *Port Arthur* address *In re Thurmon*, 625 B.R. 417 (Bankr. W.D. Mo. 2020), the sole Subchapter V case cited by the Landlord.[1] As with those cases, *Thurmon* is distinguishable from the facts in this case.

In *Thurmon*, the debtors were individuals who operated two pharmacies. 625 B.R. at 2. Prior to the petition date, debtors closed the pharmacies and sold nearly all the assets of the businesses. *Id.*, at 3. Debtors in *Thurmon* argued they were engaged in a commercial or business activity because the entity which owned the pharmacy was still an entity in good standing with the State of Missouri. *Id.*

The *Thurmon* Court found, on the petition date, debtors "had in fact sold the business with no intent to return to it and were otherwise not active or involved in any commercial or business activity." *In re Thurmon*, 625 B.R. at 423. *Thurmon* states where individual guarantors have already disposed of the assets of the company, they are not engaged in commercial or business activities. *See In re Offer Space*, 2021 Bankr. LEXIS, *24.

*Thurmon* is, therefore, quite distinguishable from the case at hand. Here, Debtor is itself an entity who was forced to temporarily close its doors because of a global pandemic. On the Petition Date, Debtor was engaged in business or commercial activities related to reopening Casa Bonita, and to formulating a Chapter 11 plan which would provide for repayment of creditors upon reopening. Because the sole Subchapter V case to which the Landlord cites is distinguishable from the facts at hand, the Landlord's Motion should be denied.

---

1 Landlord does cite to *In re Ikalowych* to show that "engaged in" means an activity done in the present. Landlord does not, however, mention any other part of the holding in *Ikalowych*.

**II.     The Landlord's assertion the case should be dismissed likewise fails.**

At the end of its brief, the Landlord devotes a paragraph to requesting the Debtor's Chapter 11 case be dismissed. The Landlord argues Debtor cannot effectuate a Chapter 11 plan and asserts any reorganization by the Debtor would rely on using PPP funds to repay creditors.

On June 21, 2021, the Debtor filed its proposed Plan of Reorganization under Subchapter V. The Debtor's Plan calls for reopening Casa Bonita and using the revenues of Casa Bonita to repay creditors in full. The Debtor's general plan is reasonably likely to succeed and is a very different plan than what is alleged in the Landlord's motion. As a result, the Landlord's request for dismissal of the Debtor's Chapter 11 case should likewise be denied.

WHEREFORE, the Debtor respectfully requests the Court enter an Order denying the Landlord's Objection to the Debtor's Subchapter V election and for all other just and proper relief.

DATED: August 2, 2021                               Respectfully submitted,

                                                    By: /s/ Jonathan M. Dickey
                                                    Jeffrey S. Brinen, #20565
                                                    Jonathan M. Dickey, #46981
                                                    KUTNER BRINEN DICKEY RILEY, P.C.
                                                    1660 Lincoln Street, Suite 1720
                                                    Denver, CO 80264
                                                    jmd@kutnerlaw.com
                                                    Telephone:303-832-2400

# CERTIFICATE OF MAILING

  I do hereby certify that on the 2nd day of August, 2021, a true and correct copy of the foregoing **DEBTOR'S RESPONSE TO BSV LAMONT JCRS LLC'S AMENDED OBJECTION TO DEBTOR'S SMALL BUSINESS DESIGNATION AND ELECTION TO PROCEED UNDER SUBCHAPTER V** was deposited in the United States mail, proper postage prepaid, addressed to the following:

Robert Samuel Boughner, Esq.
US Trustee's Office
Byron G. Rogers Federal Building
1961 Stout Street
Suite 12-200
Denver, CO 80294

Christopher C. Simpson, Trustee
Osborn Maledon PA
2929 North Central Avenue
Suite 2100
Phoenix, AZ 85012

Matthew D. Skeen, Jr., Esq.
217 East 7th Avenue
Denver, CO 80203

D. Lamar Hawkins, Esq.
Guidant Law Firm
402 East Southern Avenue
Tempe, AZ 85282

Patty Chan, Esq.
Office of the U.S. Trustee
230 North First Avenue
Suite 204
Phoenix, AZ 85003

Bradley D. Pack, Esq.
Engelman Berger, P.C.
2800 North Central Avenue
Suite 1200
Phoenix, AZ 85004

Christopher J. Dawes, Esq.
Fox Rothschild – Denver
1225 17th Street
Suite 2200
Denver, CO 80202

Patrick F. Keery, Esq.
Keery McCue, PLLC
6803 East Main Street
Suite 1116
Scottsdale, AZ 85251

Heather L. Ries, Esq.
Fox Rothschild LLP
777 South Flagler Drive
Suite 1700 West Tower
West Palm Beach, FL 33401-6159


**/s/Vicky Martina**
**Vicky Martina**
**Kutner Brinen Dickey Riley PC**