UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

IN RE:                                    )
                                          )          Case No. 21-13328-MER
SUMMIT FAMILY RESTAURANTS                 )
INC.                                      )
                                          )          Chapter 11
                                          )          Subchapter V
          Debtor.                         )

**DEBTOR'S SUPPLEMENTAL BRIEF IN SUPPORT OF RESPONSE IN SUPPORT OF
DEBTOR'S RESPONSE TO BSV LAMONT JCRS LLC'S MOTION TO ALLOW AND
COMPEL PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM UNDER 11 U.S.C. §§
365(d)(3) AND 503(b)(1) FOR POST-PETITION AMOUNTS DUE FOR RENTS ON A
NON-RESIDENTIAL LEASE IN THE ALTERNATIVE, MOTION FOR RELIEF FROM
THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)**

The Debtor, Summit Family Restaurants Inc., by and through its attorneys, Kutner Brinen
Dickey Riley, P.C., hereby submits its Supplemental Brief in Support of its Response to the Motion
for Administrative Expense Claim filed by BSV Lamont JCRS LLC (the "Landlord") and states as
follows:

## BACKGROUND

1.      Summit Family Restaurants, Inc. ("Debtor") filed its voluntary petition under
Subchapter V of the Bankruptcy Code on April 6, 2021.  While the case was initially filed in
Arizona, venue was transferred to Colorado.

2.      The Debtor and Landlord entered into a Shopping Center Lease on September 12,
2014 (the "Lease").  Debtor operates Casa Bonita pursuant to the Lease. Casa Bonita is an
"eatertainment" venue, providing food and entertainment to its customers.

3.       Paragraph 9.1 of the Lease provides Debtor will remain open during all business
hours (as defined by the Lease) unless Debtor "may be prohibited from being open for business by
applicable law, ordinance or governmental regulation." *See Lease*, ¶ 9.1.  In the event Debtor fails to
comply with paragraph 9.1, the Lease calls for liquidated damages of $200.00 per hour. *Id*.

4.      While the case was pending in Arizona, the Landlord moved for entry of an Order
seeking an administrative claim for rent the Landlord alleged was due and unpaid during the "Stub

Period" – April 6 through April 30 – and included liquidated damages in the sum of $51,400.00 for that period. Debtor responded, and briefing was finished while the case was pending in Arizona.

5.      When venue of this case was transferred to Colorado, the Court entered its Order providing for supplemental briefing of the issues at hand, with Supplemental Briefs due on or before August 11, 2021.

6.      The issue in the Landlord's motion primarily boils down to whether the Landlord is entitled to its alleged liquidated damages. While the Landlord's motion only covers the Stub Period, its Proof of Claim – filed on June 15, 2021 – seeks liquidated damages in the total amount of $417,600.00. The briefing on both sides raised factual issues pertaining to Paragraph 9.1 of the Lease from the beginning of the COVID-19 pandemic until the Petition Date.

7.      There are two legal issues at play regarding the alleged liquidated damages: first, did the various legal orders issued by the State of Colorado resulting from the COVID-19 pandemic and pertaining to the operation of businesses like Casa Bonita prohibit Debtor from operating Casa Bonita; and second, if the various legal orders from the State of Colorado did <u>not</u> prohibit Casa Bonita from operating, are the Landlord's alleged damages liquidated damages or an unenforceable penalty.

## <u>ARGUMENT</u>

**I.   The COVID-19 Pandemic, and the various Executive Orders which followed, excuse performance by Debtor of the continuous operation provision in the lease.**

8.      The previous briefing already discussed the various restrictions on operation which were imposed on Debtor as a result of the COVID-19 pandemic. Pursuant to Paragraph 9.1 of the Lease, Debtor is not in default if its doors are closed due to any law, ordinance or government regulation.

9.      In July of 2020, Debtor reached out to Jefferson County's Public Health Department in an effort to reopen in some capacity. Debtor was told (a) the arcade could not open; (b) the entertainment side of Casa Bonita could not open; and (c) patrons were limited to 100 people in the restaurant at a time – eight (8) percent of capacity.

10.     Debtor continued to work on its plan to reopen. In November of 2020, the Jefferson County Public Health Department again advised Debtor that the same restrictions remained in place.

11.      Casa Bonita dealt with unique challenges during the COVID-19 pandemic. As an "eatertainment" venue, Casa Bonita attracts customers who want dinner and a show. Unlike other

restaurants who could provide carryout services or outdoor dining, Debtor could not viably operate as a carryout or outdoor dining destination because it could not provide the entertainment part of the experience.  Simply put, the various restrictions placed on operations during the COVID-19 pandemic prevented the Casa Bonita from opening because it could not provide the entire experience.  As a result, Casa Bonita was prohibited from being open for business, did not violate Paragraph 9.1 of the Lease, and any claim by the Landlord for liquidated damages should be denied.

12.     Based on the Landlord's conduct since the Petition Date, it is not clear the Landlord would have accepted the trickle of revenue Casa Bonita might have realized through carryout or an outdoor dining variance as sufficient operation to comply with Paragraph 9.1 of the Lease.

13.     Since the end of May, 2021, Debtor has offered tours of Casa Bonita and operated the gift shop and arcade while it obtains approval to formally reopen.  Debtor offered those services to the public during the Business Hours defined in the Lease.  Based on its responses to the Debtor's discovery requests, however, the Landlord assessed liquidated damages against the Debtor in June, July and August of 2021.  Thus, it is not clear what level of activity the Landlord would have accepted from Debtor to avoid the Landlord assessing liquidated damages during the pandemic.

14.     The doctrine of frustration of purpose is applicable to the facts in this case. Frustration of purpose allows a party to avoid obligations under a contract where unforeseen events are so severe to have caused the total, or near total, destruction of the essential purpose of the transaction.  *Beals v. Tri-B Associates*, 644 P.2d 78, 80-81 (Colo. App. 1982).  Frustration of purpose requires more than unprofitability, and is not available if the event was foreseeable at the time the parties entered into the contract.  *Qdoba Rest. Corp. v. Taylors*, 2010 U.S.Dist. LEXIS 27394, *19-20.

15.     The plain language of Paragraph 9.1 shows the parties foresaw a situation where Debtor would be prevented from operating Casa Bonita by some law, ordinance or governmental regulation.  But the parties could not have foreseen a global pandemic which led to Casa Bonita, theoretically, being able to provide dine-in to just 100 people at a time (8% of capacity) and without the ability to provide entertainment.  The executive orders did not just make Casa Bonita unprofitable, they made it unable to provide the service it provides to its customers.  The COVID-19 pandemic was unforeseeable, and frustrated the purpose of Paragraph 9.1 of the Lease.  Accordingly, this Court should excuse performance under Paragraph 9.1.

16.     Finally, the dispute between the Landlord and Debtor here differs in an important way from other force majeure bankruptcy cases around the country.  Debtor is not attempting to use force majeure to suspend its obligation pay rent to the Landlord.  Instead, Debtor seeks to use force majeure to suspend the operation of Paragraph 9.1 of the Lease.  Put another way, Debtor seeks to use the force majeure section of Paragraph 9.1 of the Lease to avoid being penalized at a rate of at least $2,000.00 per day during the pandemic.

17.     *In re Hitz Rest. Grp.*, 616 B.R. 374 (Bankr. N.D. Ill. 2020) is instructive.  In *Hitz*, debtor operated a restaurant which was significantly impacted by the various executive orders issued in response to the COVID-19 pandemic.  *Id.* As the *Hitz* Court noted, the various executive orders did not prohibit all restaurant operations, but it did restrict operations to carryout and delivery.  *Id.*, at 378.  The *Hitz* Court ultimately concluded debtor was partially excused from paying rent under the force majeure clause.  *Id.*, at 379.  Because the debtor could only use roughly 25% of its restaurant space, its rental obligation was reduced to 25% of rent owed.  *Id.*

18.     Debtor does not seek the same result as in *Hitz*.  Debtor does not dispute its obligation to pay rent and has timely paid its rental obligations post-petition.  Instead, to the extent the Court does not accept the Debtor was prohibited from operating Casa Bonita in its entirety, or that the various executive orders frustrated the purpose of Section 9.1 of the Lease, the Court should follow the lead of the court in *Hitz* and reduce Debtor's obligations under Paragraph 9.1 of the Lease based on the capacity at which it could have operated throughout the pandemic – between 4% and 8%.

**II. Section 9.1 of the Lease imposes a penalty on the Debtor and is not enforceable.**

19.     There is no dispute Colorado law applies as to whether Paragraph 9.1 of the Lease imposes an unenforceable penalty.  In general, the objective for remedies upon a breach of contract is for damages to be compensatory, not punitive.  *Klinger v. Adams County Sch. Dist. No. 50*, 130 P.3d 1027, 1033-34 (Colo. 2006).

20.     Colorado has a two-prong test for whether a contractual provision for liquidated damages is invalid as a penalty.  *Klinger v. Adams County Sch. Dist. No. 50*, 130 P.3d at 1034.  If, on its face, the contract establishes the stipulated liquidated damages "are so disproportionate to any possible loss as to constitute a penalty," the provision is an unenforceable penalty, and the Court need not inquire further.  *Id.*

21.     Here, the purported liquidated damages are $200 per hour and at least $2,000.00 per day. *See Lease*, ¶ 9.1.  The damages are assessed on top of Debtor's continuing obligation to pay

rent. *Id*. Based on the numbers in the Landlord's Motion, Paragraph 9.1 of the Lease assesses a penalty of double the amount of rent. This is backed up by the Landlord's Proof of Claim, which asserts total damages of $763,818.31 through the Petition Date, of which $417,600.00 are alleged liquidated damages. *See Claim No. 9-1*.

22.    The purported liquidated damages requested are disproportionate to any potential loss to Landlord. As a result, Paragraph 9.1 of the Lease constitutes an unenforceable penalty, and the claim should be denied.

23.    If the Court finds Paragraph 9.1 is not so disproportionate on its face as to be an unenforceable penalty, the issue is a question of fact, subject to a three factor test: (1) whether the parties intended to liquidate damages; (2) whether the amount of liquidated damages, when viewed as of the time the contract was made, was a reasonable estimate of presumed actual damages from a breach; and (3) whether, when viewed as of the date of the contract, it would be difficult to ascertain actual damages from a breach. *Klinger v. Adams County Sch. Dist. No. 50*, 130 P.3d at 1034.

24.    Debtor does not dispute the Lease meets the first prong. The parties negotiated the Lease, and Paragraph 9.1 remained. *See Ravenstar, LLC v. One Ski Hill Place, LLC*, 401 P.3d 552 (Colo. 2017). The analysis does not end there, however, because failure of just one element of the three-factor test renders the provision an invalid penalty. *Id*., at 555. A penalty is designed to punish for a breach of contract, while liquidated damages are intended to be fair compensation for the breach. *Id*.

25.    The Landlord addressed the three-factor test for the first time in its Reply. As to the second prong, whether the amount of liquidated damages was reasonable at the time the contract was entered into, the Landlord states,

> "Notably, Landlord is party to another lease which includes a co-tenancy provision which directly bears on rent to which Landlord is able to collect in the event that Debtor's facility is not up and running. In short, Debtor's vacancy causes Landlord to collect lesser rent because of other lease requirements owed by Tenant. This alone has created significant economic impacts to Landlord."

*See Reply*, p. 6.

26.    The co-tenancy agreement is the only basis the Landlord provides as to why Paragraph 9.1 was a reasonable estimate of actual damages associated with the temporary closure of Casa Bonita.

27.     According to the Landlord's responses to the Debtor's discovery requests on this co-tenancy provision, the lease at issue was entered into on August 9, 2016, almost two years <u>after</u> the parties entered into the Lease.  Thus, any damages attributable to the co-tenancy agreement would not have been known at the time the Lease was executed, and are irrelevant to the second factor of Colorado's test of liquidated damages.

28.     Even if the co-tenancy agreement was in place at the time the Lease was entered into, the damages attributable to Paragraph 9.1 are disproportionate to the actual damages Landlord claims to have suffered as a result of the temporary closure of Casa Bonita.

29.     In its initial motion for administrative claim, Landlord states its damages associated with the co-tenancy agreement were $83,595.00 as of April 14, 2021 while its alleged liquidated damages were $417,600.00.  The alleged liquidated damages are 5 times the actual damages Landlord claims from the co-tenancy agreement.  Thus, even if the Landlord can rely on the co-tenancy agreement as to the second factor, the liquidated damages provision is still not a reasonable estimate of actual damages and constitutes a penalty.

30.     Paragraph 9.1 of the Lease also fails the third factor of the liquidated damages test. The actual damages from a breach would not be difficult to ascertain.

31.     The Landlord asserts the liquidated damages here are intended to compensate it for a loss of goodwill, foot traffic and patronage in the shopping center.  Those damages, however, would not have been difficult to quantify at the time the Lease was entered into, and certainly would not have been double the amount of Debtor's rent at the time.  As a result, the Landlord's motion should be denied.

32.     In light of the above, the Debtor respectfully supplements its briefing regarding the Landlord's alleged administrative claim, and seeks entry of an Order denying the Landlord's alleged liquidated damages in their entirety.

WHEREFORE, the Debtor respectfully submits its Supplemental Brief in Support of its Response to the Landlord's Motion for Administrative Claim and for such other relief as the Court deems just and proper.

DATED: August 11, 2021                              Respectfully submitted,

                                                    By: */s/  Jonathan M. Dickey*
                                                    Jeffrey S. Brinen, #20565
                                                    Jonathan M. Dickey, #46981
                                                    KUTNER BRINEN DICKEY RILEY, P.C.
                                                    1660 Lincoln Street, Suite 1720
                                                    Denver, CO 80264
                                                    jmd@kutnerlaw.com
                                                    Telephone:303-832-2400

## CERTIFICATE OF MAILING

I do hereby certify that on the 11th day of August, 2021, a true and correct copy of the foregoing **DEBTOR'S SUPPLEMENTAL BRIEF IN SUPPORT OF RESPONSE IN SUPPORT OF DEBTOR'S RESPONSE TO BSV LAMONT JCRS LLC'S MOTION TO ALLOW AND COMPEL PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM UNDER 11 U.S.C. §§ 365(d)(3) AND 503(b)(1) FOR POST-PETITION AMOUNTS DUE FOR RENTS ON A NON-RESIDENTIAL LEASE IN THE ALTERNATIVE, MOTION FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)** was deposited in the United States mail, proper postage prepaid, addressed to the following:

Robert Samuel Boughner, Esq.
US Trustee's Office
Byron G. Rogers Federal Building
1961 Stout Street
Suite 12-200
Denver, CO 80294

Christopher C. Simpson, Trustee
Osborn Maledon PA
2929 North Central Avenue
Suite 2100
Phoenix, AZ 85012

Matthew D. Skeen, Jr., Esq.
217 East 7th Avenue
Denver, CO 80203

D. Lamar Hawkins, Esq.
Guidant Law Firm
402 East Southern Avenue
Tempe, AZ 85282

Patty Chan, Esq.
Office of the U.S. Trustee
230 North First Avenue
Suite 204
Phoenix, AZ 85003

Bradley D. Pack, Esq.
Engelman Berger, P.C.
2800 North Central Avenue
Suite 1200
Phoenix, AZ 85004

Christopher J. Dawes, Esq.
Fox Rothschild – Denver
1225 17th Street
Suite 2200
Denver, CO 80202

Patrick F. Keery, Esq.
Keery McCue, PLLC
6803 East Main Street
Suite 1116
Scottsdale, AZ 85251

Heather L. Ries, Esq.
Fox Rothschild LLP
777 South Flagler Drive
Suite 1700 West Tower
West Palm Beach, FL 33401-6159

**/s/Vicky Martina**
**Vicky Martina**