UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 21-13328-MER |
| SUMMIT FAMILY RESTAURANTS INC. | ) ) | |
| | ) | Chapter 11 |
| | ) | Subchapter V |
| Debtor. | ) | |

## AMENDED PLAN OF LIQUIDATION DATED OCTOBER 6, 2021 FOR SMALL BUSINESS UNDER CHAPTER 11, SUBCHAPTER V

Summit Family Restaurants, Inc. ("Summit" or "Debtor"), Debtor and Debtor-in-Possession herein, sets forth its Amended Plan of Reorganization Dated October 6, 2021 as follows:

### I. INTRODUCTION

1.1 -   This document constitutes the Plan of Reorganization for the Debtor.  This document is designed to provide all creditors and parties in interest with sufficient information with which to make an informed vote as to the acceptance or rejection of the Debtor's Plan.

1.2 -   Any terms which are set forth in this document and defined in the Bankruptcy Code shall have the meaning attributed to them as set forth on Appendix 1 attached hereto.

1.3 -   Pursuant to the Bankruptcy Code, only Classes of Claims or Interests that are "impaired" under the Plan are entitled to vote to accept or reject the Plan.  Classes of Claims and Interests that are not impaired are not entitled to vote and are deemed to have accepted the Plan. Voting on the Plan shall be pursuant to the provisions of the Bankruptcy Code and the Bankruptcy Rules, and a Class shall have accepted the Plan if the Plan is accepted by at least two-thirds in amount and more than one-half in number of the Allowed Claims of such Class actually voting. Each holder of an Allowed Claims in Class 3-A shall be entitled to vote to accept or reject the Plan.

1.4 -   Regardless of creditor votes, if the Plan meets all of the applicable requirements of Section 1129(a) of the Bankruptcy Code, other than subsections (8), (10), and (15), the Court may

1

confirm the Plan if it does not discriminate unfairly, and is fair and equitable with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan.

1.5 -   As discussed more fully below, the Debtor firmly believes that the Plan represents the best alternative for providing the maximum value for creditors.  The Plan provides creditors with a distribution on their Claims in an amount greater than any other potential known option available to the Debtor.

1.6 -   THIS PLAN AND THE DISCLOSURES CONTAINED HEREIN HAS BEEN NEITHER APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION.  THE COMMISSION HAS SIMILARLY NOT REVIEWED THE ACCURACY OR ADEQUACY OF THIS PLAN.

## II.   HISTORY AND EVENTS LEADING TO BANKRUPTCY

Debtor owns and operates the famous Casa Bonita restaurant, located at 6715 W. Colfax Avenue, Lakewood, Colorado 80214. Casa Bonita provides a unique dining and entertainment experience that features a Mexican-themed menu, cliff divers, stage shows, magicians, live music, three amusement arcades and a large gift shop.  Casa Bonita has historically served as many as one million guests annually in one of the nation's largest restaurants in terms of size (50,837 sq. ft.) and seating capacity (1,200 patrons). Depending on the season, Casa Bonita employs between 150 to 300 individuals.

Casa Bonita has been a Colorado landmark since 1974 and Debtor has operated Casa Bonita since 1997.  Casa Bonita has consistently generated revenues in excess of 6 million dollars and has been profitable on annual basis through 2019.  The COVID-19 pandemic forced Casa Bonita to close its doors in 2020.  As Colorado worked its way through various restrictions on capacity, Casa Bonita remained closed for over one year.  Simply put, until Casa Bonita could provide the total dining and entertainment experience, Casa Bonita could not viably reopen.

Debtor and BSV Lamont JCRS LLC ("BSV") entered into a Shopping Center Lease on September 12, 2014 (the "Lease").  Paragraph 9.1 of the Lease provides Debtor will remain open during all business hours (as defined by the Lease) unless Debtor "may be prohibited from being open for business by applicable law, ordinance or governmental regulation." In the event Debtor fails to comply with paragraph 9.1, the Lease calls for liquidated damages of $200.00 per hour.

The COVID-19 pandemic led to a protracted dispute between BSV and the Debtor regarding the liquidated damages provision under the Lease. When BSV moved to evict Debtor, Debtor was forced to seek protection under subchapter V of the Bankruptcy Code.

## III.  PLAN OVERVIEW AND CLASSIFICATION OF CLAIMS AND INTERESTS

*Overview of Plan Treatment*

| CLASS | STATUS | TREATMENT |
|---|---|---|
| Class 1-A - Allowed Administrative Claims | Unimpaired | Allowed Administrative Claims will be paid in full on the Effective Date or as otherwise agreed to between the Debtor and the implicated Claimant. |
| Class 1-B – Allowed Priority Tax Claims | Unimpaired | Allowed Priority Tax Claims, to the extent they exist, will be paid in full on the Effective Date. |
| Class 2-A – Allowed Secured Claim of the IRS | Unimpaired | The Allowed Secured Claim of the IRS will be paid in full on the Effective Date. |
| Class 2-B – Allowed Secured Claim of Jefferson County | Unimpaired | The Allowed Secured Claim of Jefferson County will be paid in full on the Effective Date. |
| Class 2-C – Allowed Secured Claim of the SBA | Unimpaired | The Allowed Secured Claim of the SBA will be paid in full on the Effective Date. |
| Class 3-A – Allowed Unsecured Claims | Impaired | Allowed Unsecured Claims shall be paid in full within 30-days after the Effective Date. In the event a disputed claim is ultimately allowed, the claim will be paid in full upon entry of a final, unappealable order allowing the claim. |
| Class 3-B – The Allowed Claim of BSV | Impaired | By separate agreement, BSV agreed to accept the sum of $900,000.00 in full and final settlement of its claim in the bankruptcy case. BSV shall be paid the sum of $900,000.00 upon closing of the sale of substantially all of Debtor's assets as described in this Plan and in the Debtor's Sale Motion file September ____, 2021. |
| Class 4-A Allowed Equity Interests | Unimpaired | Star Buffet, Inc., which holds 100% of the equity interest in Debtor, will retain its interest in the Reorganized Debtor. |

## IV.  DESCRIPTION OF ASSETS

Debtor owns and operates Casa Bonita. In connection with that, Debtor has a permit to sell food as well as a liquor license. On or about September 23, 2021, the Debtor entered in an Asset

Purchase Agreement to sell substantially all of its assets to the Beautiful Opco, LLC ("Buyer") for the sum of $3,100,000.00 (the "Purchase Price"). A Motion to Approve the sale to Buyer was filed with the Court on September 27, 2021 (the "Sale Motion"). The Sale Motion is pending. A true and correct copy of the Sale Motion, which includes the Asset Purchase Agreement, is attached hereto as Exhibit 1.

## V. UNCLASSIFIED CLAIMS

### A. UNCLASSIFIED PRIORITY CLAIMS

Claims which are more particularly defined under Section 507(a)(1), 507(a)(2) or 507(a)(8) of the Bankruptcy Code are not classified and will be paid in full on the Effective Date of the Plan. These claims consist of administrative expenses incurred during the course of the Chapter 11 case, claims incurred in an involuntary case (which are not applicable) and certain priority tax claims.

### B. CLASS 1-A: ALLOWED ADMINISTRATIVE EXPENSE CLAIMS

Debtor's case began in the Bankruptcy Court for the District of Arizona. While in Arizona, the Debtor was represented by Sacks Tierney, P.A. ("ST"). ST's representation was terminated was venue of the case transferred to the Bankruptcy Court for the District of Colorado. On August 18, 2021, ST filed its final application for compensation, seeking approval of fees in the sum of $61,115.00 and costs of $88.22. ST's final application was approved by the Court. After account for the $44,044.50 held by ST as retainer, ST is still owed the sum of $17,158.72.

When the case transferred to Colorado, Debtor hired the law firm of Kutner Brinen Dickey Riley, P.C. ("KBDR"). KBDR received a retainer of $40,000.00 in the case. The amount owed to KBDR after application of the retainer is anticipated to be approximately $15,000.00.

The Subchapter V Trustee, Christopher C. Simpson filed his Interim Fee Application for compensation as the Subchapter V trustee on September 7, 2021 in the total amount of $31,900.00. The amount owed to Mr. Simpson at the end of the case is anticipated to be not more than $45,000.00.

The Purchase Price will be in an amount sufficient to pay all Administrative Claims in full on the Effective Date.

### C. CLASS 1-B: ALLOWED PRIORITY TAX CLAIMS

Debtor identified three (3) creditors with potential priority tax claims on its Schedules filed in this case: the Colorado Department of Revenue ("CDOR"); the Internal Revenue Service ("IRS") and the Jefferson County Treasurer ("Jefferson County").

<u>CDOR</u>

CDOR was scheduled as having a disputed, unliquidated and contingent claim in the sum of $3,758.30. CDOR did not file a proof of claim. Debtor does not believe anything is due and owing to CDOR as a priority tax claim.

<u>IRS and Jefferson County</u>

The IRS and Jefferson County each filed a Proof of Claim in this case. The entirety of the claims filed by the IRS and Jefferson County are claimed as secured. The IRS and Jefferson County are, therefore, treated as Secured Claims as described below.

### VI.   SECURED CLAIMS

6.1 - **CLASS 2-A. Internal Revenue Service.** The Class 2-A Secured Claim of the IRS is described in the Proof of Claim filed by the IRS on May 18, 2021 (Claim 3-1). Specifically, the IRS asserts a secured claim in the sum of $175,910.04, with interest accruing at 3% per annum. The Allowed Claim of the IRS will be paid in full from the Purchase Price on the Effective Date.

6.2 - **CLASS 2-B. Jefferson County.** The Class 2-B Secured Claim of Jefferson is described in the Proof of Claim filed by Jefferson County on May 24, 2021 (Claim 7-1). Specifically, Jefferson County asserts a secured claim in the sum of $21,985.70 with interest accruing at 12% per annum. The Allowed Claim of Jefferson County will be paid in full from the Purchase Price on the Effective Date.

6.3 - **CLASS 2-C. U.S. Small Business Administration.** The Class 2-C Secured Claim is described in its Proof of Claim filed by the SBA on May 18, 2021 (Claim 4-1). The basis for the SBA's claim is an Economic Injury Disaster Loan Grant which was part of a COVID-19 relief program. Pursuant to that loan, the SBA asserts a secured claim in the sum of $154,176.37, with interest accruing at 3.75% per annum. The

Allowed Claim of the SBA will be paid in full from the Purchase Price on the Effective Date.

## VII. UNSECURED CLAIMS AND EQUITY

7.1 **CLASS 3-A. General Unsecured Creditors.** Class 3-A consists of those unsecured creditors of Summit who hold Allowed Claims that were either scheduled by Summit as undisputed, or subject to timely proofs of claim to which Summit does not successfully object. A list of the Class 3-A claimants is attached hereto as Exhibit 2. As noted in Exhibit 2, there are a total of $1,562,963,99 in general unsecured claims after removing the Class 3-B claim of BSV. Of that amount, $1,001,563.00 may be forgiven through the Payroll Protection Program, and another $478,440.04 is a disputed pre-petition litigation claim. Allowed claims in Class 3-A will be paid the full principal amount of their claim out of the Purchase Price within 30-days after the Effective Date. Any disputed claims will be paid in full within seven (7) days after entry of a final, unappealable order allowing the claim.

7.2 **CLASS 3-B. BSV.** Class 3-B consists of the Allowed Claim of BSV. Under the terms of the Sale Motion, upon entry of an Order approving the Sale Motion, and upon closing of the sale to Buyer, BSV shall be paid the sum of $900,000.00 out of the Purchase Price. BSV is not entitled to any other distribution.

7.3 **Class 4. Interests in Summit.** Class 4 includes the interests in Summit held by the sole pre-confirmation shareholder – Star Buffet, Inc. Class 4 is unimpaired by this Plan. On the Effective Date of the Plan, Class 4 Interest Holders shall retain their interests in Summit which they owned prior to the Petition Date.

## VIII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1 Summit assumes, the following executory contracts and unexpired leases as of the Effective Date:

8.2 All contracts and leases previously assumed or for which a motion to assume is pending;

8.3 All leases and contracts that are not specifically rejected, including insurance contracts and open customer contracts.

8.4     Summit will be conclusively deemed to have rejected all executory contracts and unexpired leases for which a motion to reject has been granted or is pending as of the Effective Date. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than **45** days after the date of the order confirming this Plan.

## IX.     FEASIBILITY OF THE PLAN

Summit's Plan is feasible. The Sale Motion provides that Buyer will pay Summit the sum of $3,100,000.00. The Sale Motion is pending. At closing, and after paying the Cure Amount to BSV, Summit will hold all remaining funds in its Debtor-in-Possession account, pending further order of the Court.

Based on the filed claims in this case, outstanding claims are:

| Secured Claims | $352,072.11 |
|---|---|
| Administrative Claims | $77,158.72 (estimated) |
| General Unsecured Claims (includes cure payment to BSV) | $2,462,963.99, of which $1,480,003.04 are either contingent (the PPP) or disputed (Samuel Hernandez) |

Even in the event the contingent and disputed claims are allowed in their entirety, the total universe of claims is approximately $2,892,194.82 – or $207,805.18 less than the Purchase Price.

In light of the above, the Plan is feasible as proposed.

## X.     LIQUIDATION ANALYSIS

The principal alternative to a Debtor's reorganization under Chapter 11 is a conversion of the case to Chapter 7 of the Bankruptcy Code. Chapter 7 requires the liquidation of the Debtor's assets by a Trustee who is appointed by the United States Trustee's office. In a Chapter 7 case, the Chapter 7 Trustee would take over control of the Debtor's assets. The assets would be liquidated and the proceeds distributed to creditors in the order of their priorities.

Provided the Sale Motion is approved by the Court, and after paying BSV its cure amount of $900,000.00, Summit will have $2,200,000.00 remaining. In the event the case was converted

to a Chapter 7, and a Chapter 7 trustee was placed in charge of distributing the remaining proceeds of sale, 11 U.S.C. § 326(a) provides how the Chapter 7 Trustee is compensated. Based on Summit's calculation under the requirements of Section 326(a), it estimates the Chapter 7 Trustee would be entitled to receive $89,250.00 for distributing the funds from the sale. Said compensation would be entirely unnecessary under the circumstances.

## XI. TAX CONSEQUENCE

Summit is not providing tax advice to creditors or interest holders. **U.S. Treasury Regulations require you to be informed that, to the extent this section includes any tax advice, it is not intended or written by the Debtor or its counsel to be used, and cannot be used, for the purpose of avoiding federal tax penalties.** Each party affected by the Plan should consult its own tax advisor for information as to the tax consequences of Plan confirmation. Generally, unsecured creditors should have no tax impact as a result of Plan confirmation. The recovery of each creditor is payment on account of a debt and generally not taxable, unless the creditor wrote off the debt against income in a prior year in which case income may have to be recognized. Interest holders may have very complicated tax effects as a result of Plan confirmation.

## XII. IMPLEMENTATION OF THE PLAN

11.1 - **Effectuating the Plan.** On the Effective Date of the Plan, Mr. Robert Wheaton, the CEO and sole director of Summit, shall be appointed pursuant to 11 U.S.C.§1142(b) for the purpose of carrying out the terms of the Plan, and taking all actions deemed necessary or convenient to consummating the terms of the Plan.

11.2 - **Effective Date.** The Plan will become effective on the date the Bankruptcy Court enters its Order confirming the Plan and said Order becomes final and non-appealable (the "Effective Date").

11.3 - **Disputed Claims.** Any claimant or Summit may file an objection to any claim no later than 45 days following the Effective Date. Summit shall have standing to commence and prosecute any objection to claim.

11.4 - **Administrative Expense Bar Date.** Any creditor seeking allowance and payment of an administrative expense priority claim must do so no later than 45 days following the Effective Date.

11.5 - **Final Decree.**  Summit will request entry of a final decree within 180 days of the Effective Date.

11.6 - **Post Confirmation Reporting.**  Following confirmation of the Plan, upon request of any party in interest, Summit shall provide quarterly financial statements summarizing all distributions made in accordance with the Plan.  To the extent the Plan is subject to a non-consensual confirmation, the Subchapter V Trustee shall make all distributions, and the Subchapter V Trustee shall file post-confirmation quarterly reports with the Bankruptcy Court, and shall mail a copy of such reports to the Office of the United States Trustee.

11.7 - **Discharge.** If Summit's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that Summit will not be discharged of any debt:

(i) imposed by this Plan; or
(ii) to the extent provided in § 1141(d)(6).

If Summit's Plan is confirmed through a nonconsensual confirmation under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code, and the creditors' rights in the event of default may be greater. Summit will not be discharged from any debt:

(i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or
(ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

11.8 - **Contractual Relationship.**  The Plan, upon confirmation, constitutes a new contractual relationship by and between Summit and its creditors.  In the event of a default by Summit under the Plan, including failure to timely file and pay any post-petition taxes, creditors shall be entitled to enforce all rights and remedies against Summit for breach of contract, the Plan. Any secured creditor claiming a breach of the Plan by Summit will be able to enforce all of their rights and remedies including foreclosure of their deed of trust, security agreement, lien, or mortgage pursuant to the terms of such document.  Any creditor claiming a breach by Summit must provide written notice to Summit and its counsel of the claimed default, the notice must

provide Summit a ten (10) day period within which to cure the claimed default, unless a longer period is specified elsewhere in the Plan.  Upon Summit's failure to cure the default within such ten-day period, the creditor may proceed to exercise their rights and remedies under applicable State and Federal Law, including seeking to enforce the terms of the Plan or conversion of Summit's case to a case under Chapter 7.  In the event Summit's Plan is confirmed through a nonconsensual confirmation under 11 U.S.C. § 1191(b), creditors may have greater rights in the event of default, as debts are not discharged until the completion of all payments due within the first three years of the Plan.

11.9 - **Executory Contracts and Unexpired Leases.**  All executory contracts and unexpired leases which were entered into by Summit pre-petition, and not assumed by order of the Bankruptcy Court, are assumed as of the Effective Date of the Plan.

11.10 - **Revestment.**  The entry of an Order confirming this Plan shall revest in Summit all property of the respective estates free and clear of all liens except those specifically set forth in the Plan.

11.11 - **Retention of Jurisdiction**.  Notwithstanding confirmation of the Plan, the Court shall retain jurisdiction for the following purposes:

    a.    Determination of the allowability of claims upon objection to such claims by the Debtor-in-Possession or by any other party in interest;

    b.    Determination of the request for payment of claims entitled to priority under 11 U.S.C. Section 507(a)(1), including compensation of the parties entitled thereto;

    c.    Resolution of any disputes regarding interpretation of the Plan;

    d.    Implementation of the provisions of the Plan and entry of orders in aid of consummation of the Plan, including without limitation, appropriate orders to protect the revested Debtor from action by creditors;

    e.    Modification of the Plan pursuant to 11 U.S.C. §1193;

    f.    Adjudication of any causes of action, including avoiding powers actions, brought by the Debtor-in-Possession, by the representative of the estate or by a Trustee appointed pursuant to the Code;

    g.    Adjudication of any cause of action brought by the Debtor-in-Possession, by a representative of the estate, or by a Trustee appointed pursuant to the

Code, or the revested Debtor exercising rights and powers as provided in 11 U.S.C. §542-549. This section shall not be construed to limit any other power or right which the Debtor may possess under any section of the Code and

h. Entry of a final decree.

11.12 - **Satisfaction of Claims.** Except as otherwise required by or provided in this Plan, the Debtor shall receive a discharge on the confirmation date pursuant to Section 1141(d). Confirmation of the Plan shall constitute a modification of any note or obligation for which specification and treatment is provided under the Plan as set forth in the Plan. Any obligation or note, previously in default, so modified, shall be cured as modified as of the Confirmation Date. This provision shall be operable regardless of whether the Plan provides for any obligation to be evidenced by a rewritten loan or security document following confirmation of the Plan.

11.13 - **Headings**. The headings used in the Plan are for convenience of reference only and shall not limit or in any manner affect the meaning or interpretation of the Plan

11.14 - **Notices.** All notices, requests, demands, or other communications required or permitted in this Plan must be given in writing to the party(ies) to be notified. All communications will be deemed delivered when received at the following addresses:

a. Summit Family Restaurants, Inc.
4340 E. Indian School Road, Ste. 21-305
Phoenix, AZ 85018

With a copy to:
Jonathan M. Dickey, Esq.
Kutner Brinen Dickey Riley, P.C.
1660 Lincoln St., Suite 1720
Denver, CO 80264
Email: jmd@kutnerlaw.com

b. To an allowed claimant, at the addresses set forth in the allowed Proof of Claim, if filed, otherwise, at the address set forth for the claimant in the Debtor's Schedules filed with the Court.

c. To the IRS, by fax to the attention of Sal Rivera at (855)276-0907.

11.15 - **Unclaimed Payments**. If a person or entity entitled to receive a payment or distribution pursuant to this Plan, exclusive of the IRS, fails to negotiate a check, accept a distribution or leave a forwarding address in the event notice cannot be provided

as set forth in paragraph 18, within one (1) year of the Effective Date of the Plan, the person or entity is deemed to have released and abandoned any right to payment or distribution under the Plan.

11.16 - **Subchapter V Trustee and Plan Payments**. If this Plan is confirmed pursuant to 11 U.S.C. § 1191(a), the Trustee's services shall be terminated at such time as the Plan has been substantially consummated. If the Plan is confirmed pursuant to 11 U.S.C. § 1191(b), the Trustee shall continue to serve as Trustee, and shall accept Plan payments from the Debtor and convey said payments as provided herein.

11.17 - **Substantial Consummation**. Pursuant to 11 U.S.C. § 1183(c)(2), within fourteen (14) days after the Plan has been substantially consummated, Summit shall file a notice of the same with the Court, and serve the Subchapter V trustee, the United States trustee, and all parties in interest.

## XIII. CONFIRMATION REQUEST

Summit, as proponent of the Plan, requests confirmation of the Plan pursuant to 11 U.S.C. §1191(a). The Court may confirm the Plan pursuant to § 1191(b) if it does not discriminate unfairly and is fair and equitable with respect to each class of Claims or Interests that is impaired under, and has not accepted, the Plan.

DATED: October 6, 2021　　　　　　　　　　SUMMIT FAMILY RESTAURANTS, INC.

By: *s/ Robert E. Wheaton*
Robert E. Wheaton, CEO and sole director

APPROVED AS TO FORM:

*s/ Jonathan M. Dickey*
Jonathan M. Dickey, #46981
Kutner Brinen Dickey Riley, P.C.
1660 Lincoln St., Suite 1720
Denver, CO 80264
Telephone: 303- 832-2400
Email: jmd@kutnerlaw.com

ATTORNEYS FOR SUMMIT FAMILY RESTAURANTS, INC.

# APPENDIX

## DEFINITIONS

Administrative Claim shall mean a Claim for payment of an administrative expense of a kind specified in § 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to § 507(a)(2) of the Bankruptcy Code, including, but not limited to: (a) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the estate and operating the business of the Debtor, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case; (b) Professional Fee Claims; (c) all fees and charges assessed against the estates under 28 U.S.C. § 1930; and (d) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under § 546(c)(2) of the Bankruptcy Code.

Allowed Claim shall mean a claim in respect of which a Proof of Claim has been filed with the Court within the applicable time period of limitation fixed by Court Order in this case or scheduled in the list of creditors prepared and filed with the Court pursuant to Bankruptcy Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, in either case as to which no timely objection to the allowance thereof has been filed pursuant to Bankruptcy Rules 3001 and 3007 or as to which any such objection has been determined by a Final Order.

Allowed Secured Claim shall mean an allowed claim secured by a lien, security interest or other charge against or interest in property in which the Debtor has an interest, or which is subject to setoff under § 553 of the Code, to the extent of the value (determined in accordance with § 506(a) of the Code) of the interest of the holder of any such allowed claim and the Debtor's interest in such property or to the extent of the amount subject to such setoff as the case may be.

Avoidance Actions means each Debtor's estate's interest in any and all Claims, rights and causes of action which have been or may be commenced by or on behalf of the Debtor to avoid and recover any transfers of property determined to be preferential, fraudulent or otherwise avoidable pursuant to §§ 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code, or under any other applicable law, or otherwise subject to equitable

subordination under §510 of the Bankruptcy Code, regardless of whether or not such actions have been commenced prior to the Effective Date.

Claim shall mean any right to payment, or right to any equitable remedy for breach of performance if such breach gives rise to the right to payment, against the Debtor in existence on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured or unsecured.

Class shall mean any Class into which Allowed Claims are classified pursuant to Article III.

Class 1-4 and Claims and Interests shall mean the Allowed Claims and Interests so classified in Part III.

Code shall mean the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* and any amendments thereof.

Confirmation Date shall mean the date upon which the Order of Confirmation is entered by the Court.

Court shall mean the United States Bankruptcy Court for the District of Colorado in which the Debtor's Chapter 11 case is pending, pursuant to which this Plan is proposed, and any Court having competent jurisdiction to hear appeal or certiorari proceedings therefrom.

Disputed Claim shall mean any Claim which is not an Allowed Claim, including, without limitation, any Claim designated as disputed, contingent or unliquidated in Debtor's schedules filed in connection with this case, or any Claim against which an objection to the allowance thereof has been interposed, and as to which no Final Order has been entered.

Effective Date of the Plan shall mean fourteen days after the date on which the Order of Confirmation is entered or if a stay is entered pending appeal of the Order of Confirmation, the date on which the stay is no longer in effect.

Order of Confirmation shall mean the Order entered by the Court confirming the Plan in accordance with the provisions of Chapter 11 of the Code.

Petition Date shall mean the date on which the voluntary petition was filed by the Debtor on April 6, 2021.

Plan shall mean this Plan of Reorganization, as amended in accordance with the terms hereof or modified in accordance with the Code, including all exhibits and schedules attached hereto or referenced herein or therein.

Priority Claim shall mean any pre-petition Claim entitled to a priority in payment under § 507(a) of the Code, but shall not include any Administrative Claim or Tax Claim.

Professional Fees shall mean the Administrative Claims for compensation and reimbursement submitted pursuant to Section 330, 331 and 503(b) of the Code by a Professional Person.

Rules shall mean the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules for the District of Colorado as adopted by the Court.

Tax Claim shall mean any unsecured Claim of a governmental unit for taxes entitled to priority pursuant to 11 U.S.C. § 507(a)(8).

Unclassified Priority Claims shall mean Claims pursuant to Section 507(a)(2) which are Administrative Claims allowed under Section 503(b) of the Code and any fees and charges against the estate under Chapter 123 of Title 28 of the United States Code and shall further mean Allowed Unsecured Claims of governmental units to the extent provided for in Section 507(a)(8) of the Code.

Other Definitions. Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in the Plan but that is defined in the Code or Rules shall have the meaning set forth therein