UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 21-13328-MER |
| SUMMIT FAMILY RESTAURANTS ) | |
| INC. ) | |
| ) | Chapter 11 |
| ) | Subchapter V |
| Debtor. ) | |

**REPLY IN SUPPORT OF MOTION TO (A) APPROVE PURCHASE AND SALE AGREEMENT FOR THE SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §§ 363(b) AND (f); AND (B) TO ASSUME AND ASSIGN UNEXPIRED LEASE PURSUANT TO 11 U.S.C. § 365(f)**

Summit Family Restaurants, Inc., Debtor-in-Possession herein, by and through its undersigned counsel, hereby submits its Reply in Support of Motion to (a) Approve Purchase and Sale Agreement For the Sale of Substantially all of Debtor's Assets Free and Clear of All Liens, Claims and Encumbrances, pursuant to 11 U.S.C. §§ 363(b) and (f) and to Assume and Assign Unexpired Lease Pursuant to 11 U.S.C. § 365(f) (the "Reply").  In support of the Reply, Summit Family Restaurants, Inc. states as follows:

### I. BACKGROUND

1. Summit Family Restaurants, Inc. ("Debtor" or "Summit") filed for relief under chapter 11 of the Bankruptcy Code on April 6, 2021 in the Bankruptcy Court for the District of Arizona under Case Number 21-02477-BKM.  On June 23, 2021, venue of the case was transferred to the Bankruptcy Court for the District of Colorado under this case number.  Debtor is acting as debtor-in-possession.

2. Debtor owns and operates the famous Casa Bonita restaurant, located at 6715 W. Colfax Avenue, Lakewood, Colorado 80214.  The intellectual property associated with Casa Bonita is owned by a different company, Casa Bonita Denver, Inc. ("CBDI").

3. On September 27, 2021, Summit filed its Motion to (a) Approve Purchase and Sale Agreement For the Sale of Substantially all of Debtor's Assets Free and Clear of All Liens, Claims and Encumbrances, pursuant to 11 U.S.C. §§ 363(b) and (f) and to Assume and Assign Unexpired Lease Pursuant to 11 U.S.C. § 365(f) (the "Motion").  In relevant part, the Motion provides for the

sale of substantially all of Summit's assets to The Beautiful OPCO, LLC (the "Buyer") for the sum of $3,100,000.00 in cash, an amount that will allow all of Summit's creditors to be paid in full. The Motion also provides Summit will assume and assign its lease (the "Lease") with BSV Lamont JCRS LLC (the "Landlord"). to Buyer after using $900,000.00 of the purchase price to cure its obligation under the Lease, all as provided for under a settlement previously approved by this Court.

4. As noted in the Motion, the sale from Summit to the Buyer does not include Casa Bonita's intellectual property, which is owned by CBDI, and thus subject to a separate purchase agreement between CBDI and The Beautiful House, LLC, an entity related to the Buyer. Because CBDI is not a debtor in bankruptcy, the sale of Casa Bonita's intellectual property is not subject to the jurisdiction of this Court.

5. On October 18, 2021, Save Casa Bonita, LLC ("Save Casa") filed its objection to Motion, asking the Court to deny the Motion and instead authorize the sale of Casa Bonita to Save Casa for the sum of $3,500,000.00.

6. For the reasons stated below, Summit asks the Court to overrule Save Casa's objection and authorize the sale to Buyer as described in the Motion.

## II.     ARGUMENT

### A.     The sale to Buyer is a proper exercise of the Debtor's business judgment.

7. In evaluating whether a sale under 11 U.S.C. § 363(b) should be approved, courts consider whether the debtor exercised sound business reasons for the sale. Allen v. Absher (In re Allen), 607 Fed.Appx. 840, 843 (10th Cir. 2015). Courts will consider evidence of any improper or bad motive; whether the price is fair and negotiations or bidding occurred at arm's length; and whether adequate procedures, including exposure to the market and reasonable notice to all parties in interest, were followed. Id. Sound business judgment is determined from the debtor's point of view, not that of the purchaser. In re Castre, Inc., 312 B.R. 426, 428 (Bankr. D. Colo. 2004). A debtor-in-possession "is entitled to great judicial deference in deciding which bid to accept as the best and highest bid on the sale of the Debtor's assets." Id., at 430.

#### i.     There is no improper or bad motive associated with the sale to the Buyer.

8. The sale of Summit's assets to the Buyer is for the sum of $3,100,000.00 in cash, which funds will be wired to Summit at closing of the sale. See Motion, ¶ 11. The cash received from the sale to Summit at closing will be in an amount sufficient to pay all Summit's creditors in full. Id.

9. Save Casa does not dispute Summit's motives. See Response, ¶ 16. Save Casa takes issue with the Landlord's motives, but the Landlord's motivations are not relevant to the question of whether Summit exercised sound business judgment in agreeing to sell to the Buyer. See In re Castre, Inc., 312 B.R. at 428.

10. Because Summit did not have an improper or bad motive in agreeing to sell its assets to the Buyer, Save Casa's objection should be denied, and the sale to the Buyer approved.

   **ii. The price of the sale to the Buyer is fair.**

11. The sale of Summit's assets to Buyer is for the sum of $3,100,000.00, to be paid in cash at closing. See Motion, ¶ 11. The sale price is sufficient to pay all creditors in full. Id. Closing is anticipated to take place promptly after the order approving the Motion is entered. Id., at ¶ 14(b). Thus, absent the objection of Save Casa, Summit would have had sufficient funds to pay creditors in full in its Debtor-in-Possession account before the end of October.

12. Summit filed its Amended Subchapter V Plan (the "Plan") with the Court on October 6, 2021 (Docket No. 138). The Plan provides for payment in full in cash to unsecured creditors within thirty (30) days of the Effective Date and is predicated on the sale to Buyer. Id. With a confirmation hearing set for December 1, 2021, absent the objection of Save Casa, Summit would likely have paid its undisputed creditors in full shortly after the end of the calendar year.

13. Because the proposed sale to the Buyer is a cash deal in an amount sufficient to pay all creditors in full, the sale price to the Buyer is fair, and no creditor has standing to object.

14. Save Casa's objection the sale price itself is simply that it asserts that it is willing to pay $3,500,000.00 rather than the $3,100,000.00 in the Motion. Response, ¶ 9. Save Casa contends that this would be done under the same terms and conditions in the Motion, but it has provided no proof of funds in the Motion, and does not address how it would acquire from CBDI the intellectual property that is needed to operate the restaurant as Casa Bonita Moreover, based on the content of the Response, Save Casa will likely not find a friendly partner in the Landlord, who owns the space in which Casa Bonita operates, and who has been provided with adequate assurance only by the Buyer, and not from Save Casa. See Id.

15. Another problem with the Response is that it does not address the fact that the sale price will pay all creditors in full, and soon. The sale to Buyer is not prejudicial to creditors because they are made whole either way. The only constituency that conceivably might be better off under the Save Casa proposal (assuming it had financing, which appears not to be the case) are the holders of Summit's equity, but here equity has consented to the sale to Buyer, and does not consent to any

transaction with Save Casa. As a result, the sale price is fair and Summit properly exercised its business judgment in entering into the agreement with Buyer.

16. Additionally, the sale to Buyer is for the assets of Summit only. As noted in the Sale Motion and acknowledged by Save Casa in its response, the Debtor does not own Casa Bonita's intellectual property. See Motion, ¶ 10, n. 1; and Response, Ex. A, ¶ 9. Instead, Casa Bonita's intellectual property is owned by a separate entity – CBDI. To the extent the Court allowed Save Casa to turn the sale to the Buyer into an auction, Save Casa would still need to negotiate a separate deal with CBDI for the intellectual property in order to operate the restaurant Casa Bonita.[1]

17. Save Casa argues there is a "lack of certain disclosures regarding the IP rights related to Casa Bonita" in its Response. Response, ¶ 16. Tellingly, Save Casa does not state what disclosures related to Casa Bonita's IP rights are necessary, Id., and of course Save Casa knows that the intellectual property is owned by non-debtor CBDI.

18. In any event, a search of the records of the Colorado Secretary of State shows, for example, that CBDI owns the Casa Bonita trademark. Star Buffet, Inc., Summit's owner, obtained the Trademark to Casa Bonita from Taco Bueno Restaurants, Inc. in 1989. Star Buffet transferred the Trademark to Casa Bonita to CBDI in 2011 where it has remained ever since. True and correct copies of the relevant transfer documents are attached hereto as **Exhibit A**.

19. Without belaboring the point, to the extent they are even relevant, Summit's disclosures regarding CBDI and Casa Bonita's intellectual property have been complete throughout this case and in the sale motion.

20. As a result of the above, nothing in Save Casa's Response renders the $3,100,000.00 purchase price unfair, and Save Casa's objection should be denied.

### iii. The sale price was negotiated at arm's length.

21. Save Casa asserts in its objection that the Landlord interfered in the sale process by using the leverage of its liquidated damages claim in directing Summit's attention to a preferred buyer. Response, ¶ 16. As a result, Save Casa contends, the proposed sale to the Buyer is not the result of an arm's length agreement. Id.

22. By contrast, Summit's sale motion states it picked the Buyer out of other interested parties and then negotiated the final terms of the deal with Buyer. Motion, ¶ 12. Nothing in Save

---

[1] Ironically, if Save Casa were successful in its objection, it still would have no right to actually operate Casa Bonita. Without a separate agreement with CBDI, and an agreement with the Landlord, Save Casa would not be able to use the Casa Bonita name, and would have no premises from which to operate any restaurant, let alone the existing and unique space at which Casa Bonita has operated for decades.

Casa's response is contrary to the representation in the Motion.

23. Save Casa acknowledges it engaged in negotiations with Summit for the sale of Casa Bonita between July 2, 2021 and August 5, 2021. Response, ¶¶ 3-6. Save Casa further acknowledges it was ultimately unable to reach a deal with Summit; negotiations broke off because Summit could not reach a deal with the Landlord on the liquidated damages issue. Id.

24. The docket tells the next part of the story. On August 18, 2021, Summit filed its Status Report with the Court (Docket No. 110). In that Status Report, Summit disclosed that it had reached an agreement in principle to sell Casa Bonita to the Buyer in an amount sufficient to pay creditors in full. Id. As a result, Summit and the Landlord agreed to move the hearing on Landlord's liquidated damages claim set for August 25, 2021. Id.

25. Critically, however, Summit did not ask to vacate the hearing; it and the Landlord agreed to continue the hearing (Docket No. 109). The Court continued the hearing until September 17, 2021 (Docket No. 111).

26. In the ensuing weeks, Summit engaged in negotiations with Buyer regarding the final details of the sale and with the Landlord regarding a resolution of the liquidated damages issue.

27. On September 7, 2021, the Court reached out to counsel for Summit, counsel for the Landlord, the United States Trustee's Office, and the Subchapter V Trustee, asking if the hearing on September 17, 2021 was going to go forward. Counsel for Summit responded that the parties did anticipate going forward with the hearing. A true and correct copy of that e-mail chain is attached hereto as **Exhibit B**.

28. Twenty-days after Summit notified the Court it had a deal in principle to sell Casa Bonita to Buyer, there was no sale motion and no deal with the Landlord.

29. Both Summit and the Landlord filed objections to the other side's witness and exhibit lists on September 10, 2021 (Dockets No. 123 and 124). On September 13, 2021, Summit finally reached a deal with the Landlord on the liquidated damages issue. In the Motion to Vacate the September 17, 2021 hearing filed the same day, Summit notified the Court a deal had been reached and was being documented (Docket No. 126).

30. Two weeks later, the Sale Motion was finally filed with the Court (Docket No. 132). The Sale Motion documented the terms of the Agreement between Summit and Buyer, and it detailed the terms of the agreement with the Landlord. Id.

31. Save Casa sees a dark motive. In its telling of the facts, the Landlord "strong-armed" Summit into accepting a deal with Buyer that was not negotiated at arm's length. The docket tells a

5

different tale.

32. Summit did engage in negotiations to sell Casa Bonita to a buyer it only now knows was affiliated with Save Casa. Given the Landlord's posture on the liquidated damages issue, however, those terms were ultimately not acceptable and Summit altered its focus to reopening the restaurant.

33. The Buyer entered the picture around that time. This time, Summit was able to negotiate terms it deemed acceptable for the sale of Casa Bonita. Over the next month, it engaged in negotiations to resolve the remaining issues in the case – documenting the Asset Purchase Agreement and resolving the Landlord's claim. Nothing in the record belies the fact the sale was negotiated at arm's length. As a result, Save Casa's objection should be denied.

### iv. Summit exposed Casa Bonita to the market.

34. Property of the estate may be sold at a public or at a private sale. Prime Lending II, LLC v. Buerge (In re Buerge), 2014 Bankr. LEXIS 1264, *36 (10th Cir. BAP April 2, 2014). This Court's Local Rules further reflect that fact – a sale motion must disclose whether a debtor has agreed to not solicit competing offers for the sale of property, but such sales are not prohibited. L.B.R. 6004-1(d)(C). In the business judgment analysis of a sale under 363, the question is whether the debtor exposed the property to the market, which is determined from the Debtor's point-of-view. In re Castre, Inc., 312 B.R. at 428-30.

35. It is undisputed that Summit exposed Casa Bonita to the market. Save Casa acknowledges Summit engaged in negotiations with it for a month. Response, ¶ 3-6. Save Casa, however, was unable to reach a deal with Summit when accounting for all factors involved with the sale – including the sale of CBDI's intellectual property and resolving the outstanding issues with the Landlord. Id.

36. The Buyer was able to reach a deal in principle with Summit that met Summit's needs in the bankruptcy case. Buyer was not willing to simply be a stalking horse, so the parties negotiated a private sale, which private sale was only put in front of the Court after the purchase agreement between Buyer and Summit, a separate purchase agreement with CBDI and an affiliate of Buyer, and a deal with the Landlord were each finalized.

### v. Notice of the Sale Motion.

36. It is undisputed Notice of the Sale Motion was provided to all parties-in-interest, including Save Casa. As a result, that portion of the business judgment test has been complied with.

**B. 6004(h)**

6

37. Save Casa finally complains the Court should not suspend the operation of Fed.R.Bankr.P. 6004(h) in the event the sale to Buyer is approved.

38. Fed.R.Bankr.P. 6004(h) stays a sale for 14-days, but the Court may waive the stay to facilitate a quick closing based on the needs of the case. In re Sandia Resorts, Inc., 2017 Bankr. D. Lexis 778, *11 (Bankr. D. N.M. March 21, 2017).

39. Here, the needs of the case will be facilitated by a quick closing. During the course of the case, Summit has been paying its employees and its ongoing rental obligations out of PPP money. That money is running out. Absent a quick closing, Summit may need to layoff employees to ensure it has sufficient cash reserves to pay rent.

40. In light of the above, and given the facts of this case, a waiver of the 14-day stay of Fed.R.Bankr.P. 6004(h) is appropriate.

## CONCLUSION

41. Summit's proposed sale to Buyer is a proper exercise of Summit's business judgment. Summit did not have an improper motive in engaging in the sale. The sale price of $3,100,000.00 is a fair price because it pays all of Summit's creditors in full. Summit has made all necessary disclosures in its bankruptcy case regarding the intellectual property owned by CBDI. The sale price was negotiated with Buyer at arm's length. Summit exposed Casa Bonita to the market, including to Save Casa, and simply ended up with the sale which best met its needs in the bankruptcy case. Because of the time and expense incurred by Summit and Buyer in negotiating the final terms of the sale, the fact the sale was done without further competitive bidding is valid. Summit provided notice to all creditors in the case. And finally, given the needs of the case, relief from the stay under Fed.R.Bankr.P. 6004(h) is appropriate.

42 In light of the above, Summit respectfully requests the Court overrule Save Casa's objection and enter an Order approving the sale to Buyer as requested in the Sale Motion.

DATED this 20th day of October, 2021.

Respectfully submitted,

*/s/ Jonathan M. Dickey*

_____
Jonathan M. Dickey, #46981
KUTNER BRINEN DICKEY RILEY, P.C.
1660 Lincoln Street, Suite 1720
Denver, CO 80264
jmd@kutnerlaw.com
Telephone: 303-832-3047

## CERTIFICATE OF SERVICE

I certify that on October 20, 2021, I served a complete copy of the foregoing **REPLY IN SUPPORT OF MOTION TO (A) APPROVE PURCHASE AND SALE AGREEMENT FOR THE SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. SECTIONS 363(b) AND (f); AND (B) TO ASSUME AND ASSIGN UNEXPIRED LEASE PURSUANT TO 11 U.S.C. SECTION 365(f)** on the following parties in compliance with the Federal Rules of Bankruptcy Procedure and the Court's Local Rules:

Robert Samuel Boughner, Esq.
US Trustee's Office
Byron G. Rogers Federal Building
1961 Stout Street
Suite 12-200
Denver, CO 80294

Christopher C. Simpson, Trustee
Osborn Maledon PA
2929 North Central Avenue
Suite 2100
Phoenix, AZ 85012

Matthew D. Skeen, Jr., Esq.
217 East 7th Avenue
Denver, CO 80203

D. Lamar Hawkins, Esq.
Guidant Law Firm
402 East Southern Avenue
Tempe, AZ 85282

Patty Chan, Esq.
Office of the U.S. Trustee
230 North First Avenue
Suite 204
Phoenix, AZ 85003

Bradley D. Pack, Esq.
Engelman Berger, P.C.
2800 North Central Avenue
Suite 1200
Phoenix, AZ 85004

Christopher J. Dawes, Esq.
Fox Rothschild – Denver
1225 17th Street
Suite 2200
Denver, CO 80202

Patrick F. Keery, Esq.
Keery McCue, PLLC
6803 East Main Street
Suite 1116
Scottsdale, AZ 85251

Heather L. Ries, Esq.
Fox Rothschild LLP
777 South Flagler Drive
Suite 1700 West Tower
West Palm Beach, FL 33401-6159

Eric D. Goldberg, Esq.
DLA Piper LLP (US)
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, CA 90067

Deanna Lee Westfall, Esq.
Assistant Attorney General
Colorado Department of Law
1300 Broadway
8th Floor
Denver, CO 80203

Save Casa Bonita LLC
c/o Patrick J. Bernal, Esq.
Michael Best & Friedrich LLP
8300 Arista Place
Broomfield, CO 80021-4872

**/s/Vicky Martina**
**Vicky Martina**
**Kutner Brinen Dickey Riley PC**