UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLORADO

IN RE: )
)  Case No. 21-13328-MER
SUMMIT FAMILY RESTAURANTS )
INC. )
)  Chapter 11
)  Subchapter V
Debtor. )

## DECLARATION OF ROBERT E. WHEATON

I, Robert E. Wheaton, being first duly sworn upon oath, state and aver as follows:

1. I am the CEO and sole Director of Summit Family Restaurants, Inc. ("Summit" or "Debtor").

2. I am also on the Board of Directors of Star Buffet, Inc., which is the 100% shareholder of Summit.

3. Summit filed for relief under chapter 11 of the Bankruptcy Code on April 6, 2021 (the "Petition Date") in the Bankruptcy Court for the District of Arizona under Case Number 21-02477-BKM. On June 23, 2021, venue of the case was transferred to the Bankruptcy Court for the District of Colorado under this case number. Summit is acting as debtor-in-possession.

4. This Declaration is offered in support of Summit's Motion to (a) Approve Purchase and Sale Agreement For the Sale of Substantially all of Debtor's Assets Free and Clear of All Liens, Claims and Encumbrances, pursuant to 11 U.S.C. §§ 363(b) and (f) and to Assume and Assign Unexpired Lease Pursuant to 11 U.S.C. § 365(f) ("Sale Motion") to sell substantially all of its assets free and clear of all liens, claims and encumbrances pursuant to Bankruptcy Code Sections 363(b) and 363(f) to The Beautiful OPCO, LLC ("Buyer").

5. On the Petition Date, Summit owned and operated the famous Casa Bonita restaurant, located at 6715 W. Colfax Avenue, Lakewood, Colorado 80214.

6. The intellectual property associated with Casa Bonita is owned by a different company, Casa Bonita Denver, Inc. ("CBDI"). Star Buffet, Inc. is also the 100% shareholder of CBDI.

7. On or about September 12, 2014, Summit entered into a Shopping Center Lease, Lease Agreement with BSV Lamont JCRS LLC ("BSV") under which Summit leases the premises located at 6715 W. Colfax Avenue, Lakewood, Colorado (the "Lease").

8. BSV filed a proof of claim asserting pre-petition damages against Summit in the amount of $1,064,529.05, including unpaid pre-petition rent and amounts alleged due under a certain liquidated damages clause. While Summit is current on its post-petition rental obligations, BSV alleges post-petition liquidated damages are due and owing as well.

9. BSV and Summit entered into a Stipulation resolving BSV's claims in the bankruptcy case. The parties agreed BSV's damages claim is a general unsecured claim in the sum of $900,000.00, which amount is required to be paid under the Lease to cure the obligations thereunder. While nothing in the agreement between BSV and Summit alters Summit's ongoing obligation to pay rent, BSV agreed to accept the sum of $900,000 in full and final satisfaction of all other sums due and owing. The Stipulation was approved by Court Order dated October 13, 2021.

10. Including the $900,000.00 to be paid to the Landlord, all secured claims, and all unsecured claims of any type, Summit has total debt of not more than $2,892,194.82. Of that amount, $1,480,003.04 is either disputed or contingent. A true and correct copy of Summit's Claims Analysis is attached hereto as **Exhibit 1**.

11. On or about September 23, 2021, Summit entered in an Asset Purchase Agreement (the "APA") with the Buyer. In relevant part, the APA provides Buyer is purchasing substantially all of Summit's assets for the sum of $3,100,000.00 (the "Purchase Price"). The APA is also contingent upon the closing of the sale of the intellectual property of CBDI to The Beautiful House, LLC, an entity related to the Buyer. The sale of the intellectual property is to close concurrently with the sale of Summit's assets to Buyer.

12. Buyer will wire the Purchase Price to Summit at closing, which is scheduled to take place within two (2) business days of entry of an Order approving the sale to Buyer.

13. As part of the APA, Summit is assigning the Lease to the Buyer and Buyer is assuming the Lease. The APA contemplates Summit using $900,000.00 of the Purchase Price to cure Summit's obligation to BSV as provided for in the Stipulation. The ongoing obligations under the Lease are the sole and exclusive obligation of Summit which Buyer is assuming under the APA.

14. Summit chose the Buyer out of other interested buyers. Because the Purchase Price is in an amount sufficient to pay all creditors in full, and because Buyer has the ability to pay cash at closing within two business days of approval of the sale motion, Summit determined the sale to Buyer was in the best interest of Summit's creditors.

15. Summit and CBDI collectively determined the best and highest value for Casa Bonita's assets was to sell them as a package, with one sale contingent upon the other. After engaging in negotiations with other potential buyers, the sale as contemplated to Buyer provided the greatest return to Star Buffet, Inc., the 100% shareholder of both Summit and CBDI.

16. In light of the above, the Purchase Price is (a) fair and reasonable; (b) in the best interest of Summit's creditors and other interested parties; (c) constitutes full and adequate consideration and reasonably equivalent value for the assets of Casa Bonita; and (d) will provide

a greater recovery for Summit's creditors and other interested parties than would any other practically available alternative.

17. The Buyer is not related to Summit, CBDI or Star Buffet, Inc. The APA was negotiated at arm's length between Summit and the Buyer, and was conducted without collusion, fraud or any undue influence from any other party. The APA was negotiated for over a month after Summit and Buyer entered into an agreement in principle regarding the sale of Debtor's assets, during which time Summit and Buyer finalized all terms and ultimately were able to execute the APA. The APA accurately and completely sets forth all material terms of the transaction between the Buyer and Summit; there are no undisclosed terms of this transaction.

18. The Buyer provided Summit with adequate assurance regarding Buyer's financial ability to assume the Lease. Because of the unique nature of Casa Bonita, the assumption and assignment of the Lease to Buyer under the terms of the APA is integral to the APA. Absent the cooperation of the Landlord, Summit would not have been able to maximize the value of Casa Bonita's assets for creditors and other interested parties.

19. As noted, Summit and the Landlord have agreed to a cure amount of $900,000.00 which is the full and final cure amount due and payable to the Landlord. The Landlord will be paid the cure amount at closing of the APA out of the Purchase Price.

20. As established in the Claims Analysis, the Purchase Price is greater than the amount of any liens against Summit's assets.

21. Summit is the legal owner of all assets which will be transferred pursuant to the APA and the sale as contemplated in the sale motion will vest the Buyer with all right, title, and interest to all of Summit's assets pertaining to Casa Bonita. While the Buyer will of course be operating the physical property that constitutes the Casa Bonita restaurant, the Buyer is not a continuation of Summit. Instead, the Buyer is an entity completely separate from Summit; there is no continuity of ownership between the two. In addition, once re-opened, the business will be run by a completely new management team.

22. As of the date of this Declaration, Summit was forced to layoff the employees of Casa Bonita because its cash reserves had fallen significantly. Buyer has provided Summit with assurances that, upon the closing of the sale, Buyer will rehire Casa Bonita's employees. As a result, closing of the sale to Buyer in as expedited a fashion as possible is in the best interest of all parties. Accordingly, Summit and the Buyer are requesting that the Court waive the application of Fed. R. Bankr. P. 6004 so that the transaction can close as quickly as possible, and with minimal disruption to the employees.

23. Under the terms of the APA: (a) Summit will have no further obligation relating to the Lease after the $900,000.00 cure amount is paid to the Landlord and the Lease formally assumed and assigned; and (b) Buyer will have no further obligation relating to any other obligation of Summit. As previously stated, the Purchase Price is in an amount sufficient to pay all of Summit's remaining obligations in full.

PURSUANT TO 28 U.S.C. SECTION 1746, I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS

TRUE AND CORRECT.

By: _____
Robert E. Wheaton, CEO and sole Director
Of Summit Family Restaurants, Inc.